BENJAMIN C. BRUNDAGE *vs.* THE DOMESTIC AND FOREIGN MISSIONARY SOCIETY OF THE PROTESTANT EPISCOPAL CHURCH IN THE UNITED STATES OF AMERICA, and THE AMERICAN BOARD OF COMMISSIONERS FOR FOREIGN MISSIONS, impleaded with Henry A. L. Charles and others.

A testatrix, being seised and possessed of certain real estate, devised the same to her son, H. C., with the following proviso or condition, viz: "This devise is made on the express condition that the said H. C. removes to, and resides on said land, and makes it his permanent home, which he must do within two years after my decease. If he fails to do so within that time, I hereby authorize and empower my executors to sell the said real estate on such terms as they may deem proper, convert the same into money, and pay over the avails, one half thereof to the Domestic and Foreign Missionary Society of the Protestant Episcopal Church * * * and the other half of said avails they shall pay over to The American Board of Commissioners for Foreign Missions." At the time of the death of the testatrix, H. C. resided at San Francisco. In December, 1865, he disposed of his property in California, for the purpose of going to reside on the premises in question and making them his permanent home. Within two years after the death of the testatrix, viz: about the 1st of February, 1866, he, in good faith, for the purpose of making them his permanent home, went into possession of, and resided upon the premises, with his family, until about the 1st of April, 1866, when, his wife becoming discontented, he changed his mind of continuing to reside on the premises, and consented to, and did, in the spring and early summer of 1866, return with his family to California, where he had ever since resided; leaving, however, a tenant in the occupation of the premises.

*Held* that when H. C. so took possession of the premises and commenced to reside thereon in good faith, with the *bona fide* intention of making the same his permanent home, in full accordance with the condition imposed by the testatrix, the title vested, absolutely, in him; and by such act the condition

was fulfilled and forever discharged. And that his subsequent removal from the premises did not operate to defeat that title.

According to the settled rule of equity, a mortgagee cannot, in an action to foreclose his mortgage, call in as parties, persons claiming in hostility to the title of the mortgagor, and have the legal title adjudged in the equitable action. The question of legal title is a question of law, and to be determined in an action of ejectment, at law.

APPEAL by the defendants from a judgment of foreclosure entered upon the report of a referee.

*D. Rumsey*, for the appellants.

I. The language used by the testatrix, creating the condition upon which Charles was to have the premises in question, when used in a will, as it is here, clearly creates a conditional limitation, although the same language in a deed would be a mere naked condition, or a condition subsequent. The rule that a remainder limited on a condition subsequent is void, is not applicable to devises. Although strict words of condition are used, yet if there is a remainder over, they are always construed as creating not a condition, but a conditional limitation, and when the condition is performed or broken, as the case may be, the remainderman has the immediate right to the estate. (*See Notes of Revisers, 3 R. S. 574, 2d ed.*) That this is the true rule, is fully sustained by the authorities. (4 *Kent's Com. 3d ed.* 127–129, *and notes a, b,* 128. 1 *Ventris,* 199.) In a condition broken the estate is not affected until the heirs enter, while a conditional limitation operates directly on the estate to terminate it. (4 *Kent's Com.* 126.) The statute expressly provides that a remainder may be limited on a contingency which, in case it should happen, will operate to abridge or determine the precedent estate; every such remainder shall be held a conditional limitation, and have the same effect as such limitation would have at law. (1 *R. S.* 727, § 27. *Prop'rs of Brattle Sq. Church* v. *Grant,* 3 *Gray,* 142, 152, 153.) This rule was applied to devises by the common law, and to conveyances, by the above

section of the statute, and the object of the statute was to defeat the old rule that, on a condition broken, the heir entered and held the estate for himself, thereby defeating the remainder. (2 *Black. Com.* 155, 156, *note* 6.) And this rule, turning a condition into a conditional limitation, applies equally whether the condition be precedent or subsequent. (*Hunter* v. *Hunter*, 17 *Barb.* 25, 92, 93. *Hill* v. *Hill*, 4 *id.* 419. *Page* v. *Hayward*, 11 *Mod.* 61.)

II. Conditional limitations are never held to be in restraint of alienation when they are connected with a devise over, but are so held when there is no devise over. (*See* the three cases last cited; *Redf. on Wills, part* 2, *p.* 664, § 11; *Id. pp.* 667, 668, §§ 17, 18; 2 *Black. Com.* 155, 156.) In *Newkerk* v. *Newkerk*, (2 *Caines*, 345,) a similar provision in a devise was held invalid, not because it was a restraint upon alienation, but because there was no devise over. (*See p.* 355.) In this case, however, the question was not material, for the devisees were also the heirs at law, and took in any event.

III. In the will of Mrs. Charles, containing the devise in question, there is a devise of the remainder over, in case of a breach of the condition upon which Charles is to hold the land. 1. The direction of the executors to sell, clearly manifests the intention of the testatrix, that, on the failure of the estate of H. A. L. Charles by the limitation imposed upon it, the land should be converted into personal estate, is not dependent on the will of executors, but may be compelled in equity for the benefit of parties interested. Such is the statute. (1 *R. S.* 734, § 96. *Phelps* v. *Phelps*, 28 *Barb.* 121.) This alone is a good disposition of the remainder. 2. But the general residuary clause operates as a limitation of the interest of Charles in case he fails to perform, and passes it over, as effectually as if there had been an express limitation over the specific thing; so held in *Hyman* v. *Williams*, (12 *Ired. N. C.* 92; cited 12 *U. S. Dig.* 196, § 197.)

IV. Under the provisions of this will, H. A. L. Charles was not only required, within two years, to remove upon and reside on the devised land, but when he is so on, he is to make that his permanent home. If the limitation attached to Charles' estate in the land has any validity, it is quite as obligatory upon him to make it his permanent home as it is to make it his residence at all. This, it is clear he has not done. He swears that with exception of the short visit he made to Angelica in 1866, he has always resided in California since 1849, and he still resides there. To have the land he must comply with the terms on which it is given to him, unless by the act of God, or the provision of some law forbidding the performance, he is prevented. (4 *Kent's Com.* 130, 3d ed.) But in this case the title of Charles has failed by his own act in ceasing to make the premises his *permanent home.* Permanent has a clear, distinct meaning—" continuing without change;" " durable ;" "lasting," are the definitions given of the word, and it must be held the testatrix used the words in these senses. It does not create a perpetuity, for it cannot exceed the term of Charles' natural life. If he did not like the terms upon which he could have the land, he could leave it; but if he wants it, he must comply with the provisions of the will. " Where condition of a bequest requires donee to reside in a particular house, all that is required is that he reside there such portion of his time as to maintain that as his legal domicil or residence for the time required by the condition." (*Redfield on Wills,* part 2, *p.* 678, § 33, *and cases cited. 3 Bro. Cases,* 359, *cited in 2 Cruise's Dig.* 36.) In the case in 3 *Gray,* 142, the condition was held bad, simply for the reason that in case of a corporation, it tended to create a perpetuity. (*Walcott v. Botfield, Kay R.* 534. *Wynne* v. *Fletcher,* 24 *Beavan,* 430. *Dunne* v. *Dunne,* 3 *Smale & Giff,* 22.) If, therefore, this limitation was a valid one, the future estate in the land cannot be held void, on the ground of the probability or

improbability of the contingency on which it is limited to take effect. (1 *R. S.* 724, § 26.) The only authority to conflict with this rule is the case of *Mead* v. *Ballard,* (7 *Wallace,* 290,) where it was held that a condition that "the Lawrence Institute should be permanently located on said lands, and on failure of such location being made on or before 7th of September, 1848, and repayment of consideration money, land should revert," was held to be complied with by selecting such location, without any present intention to change it, erecting buildings and starting the institute, although they were never rebuilt. In this case there was a full consideration paid for the land. There seems to be a manifest distinction between this case and the one arising under this will. In the one case it is the actual fixing, locating the site of the building in good faith by a certain time—an act evidently involving only a moment of time. In the other, it is clearly the intention of the testatrix that Charles shall, within two years, remove to and reside on the land, and when so on it he shall make it his permanent home—a home "continuing without change," "durable," "lasting." Any other construction of the will evidently defeats the object of the testatrix.

V. The referee erred in finding as a fact that the devisee Charles went upon the premises and resided there for the purpose of making it his permanent home, and the conclusion of law from such fact, that he had complied with the condition of the devise, so as to vest in him an absolute title. The testatrix would be somewhat astonished to learn that a pretended staying by Charles on this land, for about ten days, as found by the referee, was making it his permanent home according to her intention. But Charles' action was a mere trick. He never in fact took up his actual residence on this land. He came there about the 1st February, 1866. The house was then occupied by Robinson, who continued to occupy all of it except three

rooms up stairs, into which Charles put a few things, some of which he bought, and most of which he borrowed; was off most of the time, except about ten days near the 1st day of April, 1866, when he abandoned the premises entirely, leaving them to Robinson, excepting the pretense of reserving three rooms for his own use, into which he never afterwards set foot, from which all the furniture was taken the same spring, and Robinson has since, as he did before, occupied the whole house. (*See Ev. in case pp.* 30–38.) See also the evidence as to the making of the mortgage; no money paid, no interest paid, and, evidently no intention any should be paid.

VI. It is insisted that the fact of Charles making this mortgage and allowing his title to the land to be divested by a sale under it, is of itself a *felo de se*, and a termination of his estate. He then ceases, by his own act, to have the power to make his permanent home on the land, as required by the devise to him. If a party is bound to perform a condition, and disables himself from so doing, this is a breach. (1 *Bacon's Ab.* 416, *title Condition.*)

VII. Proof of the judgment in the action brought by the executors of Mrs. Charles, the testatrix, against the corporations who defend this action, and others, for the settlement of accounts of executors was improper evidence, as it could in no event affect the defendant's rights. It could only affect the defendants in regard to the matters in question in that action; these were simply the settlement of executors' accounts. The complaint was sworn to April 2, 1866. A notice of the object of suit, the settlement of such accounts only, was served with summons. Charles then claimed to have possession of the land under the will. This bond and mortgage was not then made, for it is dated April 10, 1866, and the prayer for judgment is simply for a settlement of accounts. It asks for no construction of the will, and no determination of the rights of anybody, except the settlement of the accounts. And

the judgment is only on the accounts, and not one word in it as to the rights of Charles, or any one else.

VIII. Assuming that the failure of Charles to make this land his permanent home terminated his title to it, the plaintiff cannot have the judgment he asks for. If the mortgage is of any effect, it can give the plaintiff no greater title than Charles had. The conditional limitation was annexed to the estate as part of the tenure, and would, of course, affect the land into whomsoever's hands it passed. He had but a base fee. (*Hogeboom* v. *Hall*, 24 *Wend.* 146–148. 4 *Kent's Com.* 10, 3*d ed.*) It follows that when the plantiff took from Charles his mortgage, he did so with all the contingencies connected with the title to the land mortgaged.

*Hakes & Stevens*, for the respondent.

I. The testatrix, by the terms of the will, evidently intended that all the defendant Charles was to do to acquire perfect title, was to be done within two years after her decease. He must reside on and make it his permanent home within two years, and if he does this, title vests in him; and if this is not done, then the executors are empowered to sell; showing that the intention of the testatrix was, that at the end of two years that question, as to whether the executors were to exercise the power, was to be known and determined; and not to leave the exercise of that power open and uncertain for the executors during the natural life of Charles. The testatrix could not have contemplated a continuous permanent home during his life, nor for all time, or she would have so expressed it. The use of the word "permanent" cannot control the limitation expressed as to time. The removal with his family to, and residence upon, the lands, made it his home, and that, too, a permanent one, until it was changed; which was not done within the time limited. He had the whole of two years to determine whether he would perform the

condition, or not, except what portion of time it required to complete that determination in good faith, to sell his property in California, quit his business there and remove to and reside on the lands. (*Mead* v. *Ballard*, 7 *Wallace*, 290.) It would seem, also, that the fact whether Charles performed the condition, was to be determined by the executors within that time, and they having so determined, is strong evidence of the performance, if not conclusive.

II. If the words "permanent home" are to be construed to mean a continuous residence on the land, after the two years, so as to defeat the title by a removal after that time, it would be a condition which would be void, as being repugnant to the nature of the estate devised. (1 *Jarmin on Wills*, 808. *Roosevelt* v. *Thurman*, 1 *John. Ch.* 220. *McDonald* v. *Walgrove*, 1 *Sandf. Ch.* 274.)

III. The condition imposed upon Mr. Charles by the will, if susceptible of that construction, would be in restraint of alienation, and therefore void. (*Newkerk* v. *Newkerk*, 2 *Caines*, 345. *Martin* v. *Ballou*, 13 *Barb.* 133.) See *Redfield on Wills*, 665, § 13, where it is said that if a devise is made on a condition, to be cultivated in a particular mode, the condition is void. The American cases have commonly held strictly to the early doctrine of the English courts of law, that when the devise is in force, any restraint upon use or alienation is void for repugnancy. (*Id.* 680, § 37.)

IV. Although it is not very important in this case, if our construction claimed is correct, whether it is a condition precedent or subsequent, or a conditional limitation, yet it is claimed that this is a condition subsequent, during the two years, with title absolute after that time, and not a base fee. The executors were right in giving Charles the rents from the time of the decease of the testatrix. A condition subsequent is defined to be "a condition annexed to an estate already vested, by the performance of which such estate is kept and continued, and by the fail-

ure and non-performance of which it is defeated." The words, "I give and devise," &c., vested the estate from the decease. No one has entered on account of an alleged breach of the condition, which is necessary, if it is a condition subsequent. In *Martin* v. *Ballou*, (13 *Barb.* 133,) a devise of lands to a town for a school-house, "provided it be built within one hundred rods of the place where the meeting-house stands," was held to be void as a condition subsequent. (4 *Kent's Com.* 125. *Mead* v. *Ballard, supra.*)

V. The defending corporations are not in a situation to object to either the foreclosure or payment of the mortgage. If their claim is valid, then their right is prior to that of the plaintiff, and not affected by a foreclosure. If not valid, then they are not in a situation to object to the act of Charles in executing a mortgage upon his own property, the consideration of which they cannot question. Their remedy is by ejectment against Mr. Charles or his tenants in possession, or in equity to compel the executors to execute the power if they are not already discharged.

VI. These defending corporations, as well as the executors and Mr. Charles, are concluded by the judgment entered in 1868. The plaintiff is in privity with Charles. If an action should now be brought against him in ejectment, or against the executors to compel the execution of the power, it is claimed that all would be concluded by that judgment. "The general rule on that subject is well known to be that a former judgment of the same court, or of a court of concurrent jurisdiction, directly upon the point in issue, as a plea in bar or as evidence, is conclusive between the same parties, or others claiming under them upon the same matter directly in question, in a subsequent action or proceeding." (*Harris* v. *Harris*, 36 *Barb.* 94.) "Such judgment or adjudication is final and conclusive, not only as to the matter determined, but as to every other matter which the parties might have litigated, and have been decided as incident to or essentially connected

with the subject matter of the litigation, and every matter coming within the legitimate purview of the original action, both in respect to matters of claim and of defense." (*Id.*) It is therefore claimed that the judgment appealed from should be affirmed, with costs.

*By the Court,* TALCOTT, J. This is an action to foreclose a mortgage upon a farm in Angelica, Allegany county, executed by Henry A. L. Charles, to the plaintiff, on the 10th day of April, 1866, to secure the payment of the sum of $1000, with interest. The question presented is as to the title of the mortgagor, at the time of the execution of the mortgage.

. The appellants claim in hostility to the title of Charles, and according to the settled rule of equity, a mortgagee cannot, in an action to foreclose his mortgage, call in to the suit parties claiming in hostility to the title of the mortgagor, and have the legal title adjudged in the equitable action. The question of legal title is a question of law, and to be determined in an action of ejectment, at law. In this case, however, the objection is not raised by the defendants. Both parties seem to treat this as an action to determine the legal title, and desire the court to decide that question. Under these circumstances we will proceed to examine that question.

Hannah E. Charles, the mother of Henry A. L. Charles, the mortgagor, owned the premises in question in her lifetime, and died on the 16th day of February, 1864, leaving her last will and testament, whereby she devised the premises in question to the said Henry A. L. Charles, with the following proviso or condition, viz: " This devise is made on the express condition that the said Henry A. L. Charles removes to and resides on said land, and makes it his permanent home, which he must do within two years after my decease. If he fails to do so within that time, I hereby authorize and empower my executors

to sell the said real estate, on such terms as they may deem proper, convert the same into money, and pay over the avails, one half thereof to the Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the United States of America, incorporated by the State of New York in the year 1846, and the other half of said avails they shall pay over to the American Board of Commissioners for Foreign Missions."

By the will, the testatrix appointed the defendants William Willson and John G. Collins the executors thereof. The appellants put in an answer claiming that the devisee Charles had never complied with the condition of the devise, and that the title never vested in him. The action was referred to a referee, who, upon the testimony, found and reported as matter of fact, that at the time of the death of the testatrix the said Henry A. L. Charles resided at San Francisco, and that in December 1865 he disposed of his property in California, for the purpose of going to reside on the premises in question, and making them his permanent home; and that within two years after the death of the testatrix, to wit, about the 1st day of February, 1866, the said Charles, in good faith, for the purpose of making them his permanent home, went into possession of and resided upon the premises, with his family, consisting of his wife and three children, and that the said premises continued to be his place of residence until about April 1st, 1866, when he left them, and has not since returned. That his wife becoming discontented, and desirous of returning to California, he changed his mind of continuing to reside on the premises in question, and consented to, and did, in the spring or early summer of 1866, return with his family to California, where he has ever since resided; but that the premises have been occupied under him ever since he went into possession.

The referee finds, as a conclusion of law, from these facts, that when Charles so took possession of the prem-

Brundage *v.* Domestic and Foreign Missionary Society.

ises and resided thereon in good faith, with intent and for the purpose of making the same his permanent home, he fulfilled the condition of the devise, and the title absolutely vested in him; and that his subsequent removal did not operate to defeat that title.

We think the referee was correct in this conclusion of law. It is manifest that the testatrix intended to devise an estate in fee, subject to the performance of the condition. That condition was, by its very terms, a condition which could be performed, and was to be performed, within two years from the decease of the testatrix. To hold that the title was defeated by the subsequent abandonment of the premises as a place of residence, would be to treat the condition as one that could not be performed within two years, and on such construction it could not be fulfilled until the death of the devisee. Such a construction would, we think, be contrary to the intent of the testatrix, as evinced by the language which she has used. Conditions, especially in restraint of alienation, are not to be extended by construction.

The case of *Mead* v. *Ballard* (7 *Wall. U. S.* 290) seems quite analogous to the case at bar. The title, we think, vested absolutely in the devisee when he commenced to reside on the premises with the *bona fide* intention of making the same his permanent home, in full accordance with the condition imposed by the testatrix, and by such act the condition was fulfilled and forever discharged.

The appellants, in their points, raise some question about the consideration of the mortgage. No such defense is set up in their answer, and if it were, it would present a question in which the appellants have no manner of interest. They do not claim under the mortgagor, but in hostility to his title.

The judgment should be affirmed, with costs.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, May 1, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]