BRIDGET BRADLEY V. SAMUEL PARKHURST.

1. PLEADING; *Demurrer; Motion.* Where there is an absolute want of allegations sufficient to make out a cause of action, demurrer, and not motion to make more definite and certain, is the proper remedy.

2. TITLE PARAMOUNT, *in Foreclosure Action.* The question of adverse and paramount title may be litigated in an action to foreclose a mortgage. [HORTON, C. J., dissenting.]

3. ACT FOR SALE OF SCHOOL LANDS; *Effect of Amendments.* A patent for Kansas school lands issued in October 1871, recited that it was issued in accordance with the provisions of the act of 1864, entitled "An act to provide for the sale of school lands." Between 1864 and 1871, said act was by successive legislatures materially amended in several of its sections, though never in terms repealed; and such amendments changed both the conditions and procedure. *Held,* That the patent was not void upon its face, in not reciting that it was issued in pursuance of said act and amendments.

4. —— *Patent for School Lands — When not Impeached.* Where a patent for school lands is issued to E. E. W. personally, and contains no recital of, nor reference to any proceedings in the probate court, and a party seeking to impeach its validity offers in evidence a certain petition filed in the probate court by the city of Independence, by E. E. W. its mayor, for the purchase of said lands, and an order authorizing said E. E. W. to purchase said lands in trust for the occupants, and there is no further evidence tending to show that there were no other proceedings in the probate court by E. E. W. personally, or that there was any connection between these proceedings and the patent, *held,* no ground for impeaching the validity of the patent, even if it was open to question by any party other than the state.

5. —— The 16th and 36th sections of land pass by congressional grant to the state, as school lands, unless "sold or otherwise previously disposed of." A patent from the state for a tract in section 36 *prima facie* conveys a good title, and is not shown to be a nullity by a receiver's receipt dated two years after the patent, without further proof of the proceedings before the United States land-officers.

*Error from Montgomery District Court.*

PARKHURST, as plaintiff, brought this action to foreclose a mortgage on Block 85 and the W. ½ of Block 84 in the city of Independence, executed to him on the 17th of February 1873 by W. O. Sylvester and wife. The city of Independence

was laid out on section 36, township 32 south, range 15 east. D. T. Camenga, J. M. Anderson, Enoch Sylvester, and *Bridget Bradley*, were joined as co-defendants. W. O. Sylvester and wife, mortgagors, and Enoch Sylvester, made default. Camenga and Anderson answered, admitting plaintiff's cause of action, and set up a claim as junior mortgagees. Mrs. *Bradley* claimed the land by title paramount to that of *Parkhurst's* mortgagors, Sylvester and wife. The nature and source of her title, and the proceedings thereon, are fully stated in the subjoined opinion. The district court, at the March Term 1875, found the issues against Mrs. *Bradley*, and decreed the foreclosure of both the *Parkhurst* and Camenga and Anderson mortgages. Mrs. *Bradley* brings the case here on error.

*Nathan Cree*, for plaintiff in error.

*Daniel Grass*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action to foreclose a note and mortgage. Plaintiff in error was made a defendant. It was not alleged that she executed the note, or the mortgage, or was in any manner privy to them. On the contrary, the only allegation in the petition touching her was in these words:

"And the plaintiff further says, that on the 13th of April 1874, Maggie Reynolds and Charles T. Reynolds fraudulently and corruptly made, executed and delivered their certain deed in writing conveying the said premises to the said Bridget Bradley, who now claims ownership of the said premises, which said last-mentioned deed was duly recorded in the office of register of deeds in said county of Montgomery on the 13th of April 1874, in book G of deeds, at page 95."

The mortgage was alleged to have been executed and recorded 17th February 1873. There was nothing to show what title, or whence derived, was in Reynolds, and no allegation that Bridget Bradley's claim of ownership was not well founded, except such as might be implied from the

charge that Reynolds' deed to her was fraudulently and corruptly made. It was not alleged that such deed was her only source of title, or the sole basis of her claim of ownership. To this petition Bridget Bradley filed a motion, that it be made more definite and certain by showing the nature of Reynolds' title, and when and where derived, and whether it was acquired prior, or subsequent, to the execution of the mortgage. This motion was overruled and thereupon she filed an answer, denying any title in the mortgagor, alleging full title in herself, and reciting a chain of conveyances from the government to her, and praying for judgment against the plaintiff for costs. To this a reply was duly filed. After trial a decree of foreclosure was entered, and in that was an order barring plaintiff in error of all interest in the premises.

Three errors are alleged. First, in overruling the motion. Second, in trying the question of title paramount in an action to foreclose a mortgage; and third, in holding that the mortgagor's title was in fact paramount to that of plaintiff in error. Of these in their order.

I. Did the court err in overruling the motion? We think not. The defect in the petition was not a lack of certainty and precision, but a want of sufficient allegations. It stated

1. Pleading, demurrer; motion to make definite.

no cause of action against plaintiff in error; and demurrer, rather than motion, was the proper remedy. If she had made default, her default would simply have admitted the truth of the allegations, and those allegations gave to the plaintiff no right to judgment against her. The petition alleged that she claimed ownership, but failed to allege that that claim was not well founded and superior to the rights of the mortgagee. If it was, of course no decree could be rendered against her. *Nooner v. Short*, 16 Kas. 220. True, it also alleged that Reynolds fraudulently and corruptly deeded to her subsequent to the mortgage; but it does not allege that Reynolds' title was inferior to the rights of the mortgagee—and unless it was, no fraud or corruption in the deed inured to the benefit of the mortgagee. In no view of the case was a cause of action

stated against the plaintiff in error. The allegations were not uncertain; they were insufficient. The court therefore properly overruled the motion.

II. Can the question of title paramount be litigated in an action to foreclose a mortgage? And here the question may arise in two ways: First—Can a mortgagee compel a defendant, other than the mortgagor, to litigate the question of title paramount? Second—Where a defendant, sued in an action to foreclose a mortgage, sets up in his answer a paramount title, and without objection goes to trial upon that issue, can he if beaten ask a reversal on the ground that such an issue was not properly triable in the action? The question now presented to us comes in the latter form. After the decision on the motion, plaintiff in error filed an answer setting up her title in detail, and went to trial upon the issue thus raised without objection. Can she now say that such issue was not triable?

2. Title paramount, in foreclosure action.

That under the old practice, title paramount could not be tried in an action to foreclose a mortgage, cannot be doubted; and such seems to be the rule in states where the code practice obtains, and separate law and equity tribunals have ceased to exist. A reference to a few of the authorities will make this plain. In *San Francisco v. Lawton*, 18 Cal. 465, it was held, that adverse titles were not proper subjects of determination in a foreclosure suit. To the same effect, *Cragan v. Minor*, decided by same court, 6 Central Law Journal, 354. In *Banning v. Bradford*, 21 Minn. 308, the court decided that a mortgagee cannot maintain an action against one claiming by title adverse, and, if valid, paramount to that of the mortgagor. In *McCormick v. Wilson*, 25 Ill. 274, it was said, that where the allegation in the petition is of title subordinate to the mortgage, a decree on default affects no title or interest not subordinate thereto. In *Eagle Fire Ins. Co. v. Lent*, 6 Paige, 635, the chancellor held that a mortgagee has no right to make a person whose claim is prior to the mortgage, and who holds a legal title adverse to the mortgagor and mortgagee, a party to try the validity of such title. To the same

effect is a recent decision of the supreme court of the United States in a case from Tennessee. *Deal v. Reynolds*, 17 Albany Law Journal, 132. See also, *Brundage v. D. & F. Miss. Soc.*, 60 Barb. 204. In *Corning v. Smith*, 6 N. Y. 82, it was ruled, that where a defendant sets up title adverse and anterior to the mortgage, the plaintiff should dismiss the bill as to him, unless prepared to prove that such claim in fact arose subsequent to the mortgage. In *Pelton v. Farmin*, 18 Wis. 222, a demurrer to an answer setting up paramount title, was sustained, as tendering no issue for trial. In *Palmer v. Yager*, 20 Wis. 91, upon an allegation of superior equitable title in mortgagor, as against the legal title in a third party, the court says that it seems that such title ought to be examined and determined. In *Roche v. Knight*, 21 Wis. 324, where there was proof of paramount title, it was held, that a decree barring the holder thereof was erroneous. In *Board Sup. v. P. R. Rld. Co.*, 24 Wis. 119, it was said, if paramount title be alleged and litigated, the decree is erroneous, and should be reversed, but is not void, and is conclusive unless reversed on error. And in *Roberts v. Wood*, 38 Wis. 60, where an answer was filed setting up a tax deed as paramount title, it was held that the action was properly dismissed as to such defendant. In Pomeroy on Remedies, sec. 334, the author says: "As titles, interests, and liens, prior and paramount to the mortgage, are in no way affected by it, or by the decree of foreclosure and the sale thereunder, the owners and holders thereof are neither necessary nor proper parties."

On the other hand, it cannot be questioned that the practice has been quite common in this state to bring in as parties defendant, in a foreclosure suit, all who claim any interest in the mortgaged premises, whether subordinate, or adverse, to the mortgagor's title. Especially has this been true in cases of tax deeds, whose validity has been a subject of frequent litigation in such actions. In an early case in this court, *Bayer v. Cockerill*, 3 Kas. 282, it appeared that the legal title in Bayer had been in the district court held subordinate to the equitable title of the mortgagor, and a decree of fore-

closure rendered barring him of all interest in the premises; and this decree was sustained. This is kindred to the case from 20 Wis., *supra*. True, the question here presented does not appear to have been raised in the 3 Kas. case; at least, it was not noticed by the court. It is therefore not decisive, and is authority only as showing the practice of able lawyers, and, to that extent, the common understanding of the profession.

The question is one of statutory construction; for that the legislature has power to authorize the litigation of adverse titles in foreclosure actions, cannot be doubted. That such joinder tends to confusion, by multiplying the issues, or that it enhances the value of judicial sales by presenting the property stripped of all embarrassing questions of titles and claims, are matters for legislative rather than judicial consideration. So also are the suggestions, that in recognizing such a procedure we are no longer walking *super antiquas vias;* or conversely, that it harmonizes with the general policy of the code, which aims to have the whole subject-matter of any controversy settled in a single action. The code, section 83, authorizes the joinder of several causes of action, whether legal, or equitable, or both, where they arise out of "the same transaction, or transactions connected with the same subject of action;" "but the causes of action so united, must * * * affect all the parties to the action, except in actions to enforce mortgages or other liens." We had occasion to examine this section with some care in the case of *Scarborough v. Smith,* 18 Kas. 399, where we held it authorized the uniting of a cause of action for the recovery of real property, one for rents and profits, and one for partition. Is the title to land mortgaged, so connected with the mortgage, that they can be said to be transactions connected with the same subject of action? An action on a note and mortgage involves two things — first, an inquiry as to the amount due on the note; and in that, it is personal; and second, a proceeding to charge the real estate mortgaged with the payment of the amount found due; and in that respect it is in the nature of a proceeding *in rem. Ogden v. Walters,* 12 Kas. 294. So far as the mere personal

side of the action is concerned, it is immaterial what the title to the land may be, or whether there be other liens or claims upon it. But so far as the second branch is concerned, it is material to know what is the title, and what the other liens. They affect the value of the decree; and the title as much or more so than the liens. So far as it is a proceeding *in rem*, the status of the *rem*, the quantity of interest to be reached and covered by the decree, is material. The right to have the real estate subjected to the payment of the debt, may be said to be the subject of the action. Another lien is not the "same transaction," but is a "transaction connected with the same subject of action." It is connected by the real estate upon which the two liens are charges. The same connecting link binds a lien to an adverse title. If there are two mortgages, but upon entirely separate tracts, there is no connecting link, and the transactions are not connected with the same subject of action. A proceeding *in rem* touches the property. It aims to seize and sell the thing itself, and not the mere interests or claims of persons in the thing. But can it be fully adjudged, that the debt is a lien upon the real estate, and that this, *the res*, is to be sold without a determination of adverse claims? Otherwise, the *res* may be sold or not; all, or nothing, may pass; and a purchaser, buying at a sale purporting to be a sale in a proceeding *in rem*, may have seized a substance, or only grasped a shadow.

It will be borne in mind that the right of a mortgagee to have other lien-holders made parties, is not the right of two lien-holders to unite and foreclose their separate liens in one action. It is the right of the single lien-holder to bring in, as parties defendant, other lien-holders, and litigate, as against them, the validity and extent of their alleged liens. He unites with his cause of action on his mortgage, and for establishing his own lien, a cause of action against the other lien-holders to contest their claims. The nature of the issues, and the extent of the controversy, may be no more difficult or greater in litigating adverse titles, than in contesting other liens. Suppose that A., a mortgagee, brings his action to

foreclose his mortgage, making B., the mortgagor, and C., D. and E., parties defendants. C. answers, setting up another mortgage; D. alleges a conveyance from the mortgagor of a moiety of the land made prior to the mortgage, but recorded subsequently, but that A. took his mortgage with notice thereof; while E. alleges a tax deed, and therefore claims the entire land as against all the other parties. A. replies, alleging that C.'s mortgage is void, or has been paid, that he had no notice of D.'s conveyance, and that the tax deed of E. is void upon its face, and therefore that E. has only a tax lien. Now that A. may litigate with C., is conceded. The latter's mortgage is a transaction connected with the same subject of action. Are not the claims of D. and E. just as much transactions connected with the same subject of action? Are they not as fully and as closely connected with A.'s right to have the real estate subjected to the payment of his mortgage? Does the giving of the lien to C. affect A.'s rights any more than the conveyance to D., or the tax deed to E.? Wherein is a cause of action against C. more closely connected with enforcing a charge upon the real estate, than one against D., or E.? We fail to see. The interests, the questions to be litigated, may be different; but the connection is not more close, real, or material. Such adverse claimants may not be, are not, necessary parties. Neither are other mortgagees. If not made parties, their rights are not affected. But if made parties, they may litigate their claims; and having litigated them, are concluded by the litigation. Certain obstacles which prevented, under the old practice, the uniting of the two causes of action, no longer exist. The separate courts of law and equity have been abolished, and now all actions, whether legal, or equitable, are triable in one tribunal. The forms of procedure are simplified and unified; so that, if the foreclosure, and the litigation of the adverse title, were neccessarily in separate actions, they would each be brought in the same court, and the same form of action. So far as uniting two causes of action, in one of which defendant may be entitled

to a jury as matter of right, and in the other not, we reply, that so far as the foreclosure is concerned it was long ago held, in this court, that defendant was entitled to a jury, it being an action for the recovery of money, though not one for the recovery of money only. *Clemenson v. Chandler*, 4 Kas. 558; Gen. Stat., p. 680, sec. 266. Further, that if the mortgagor be in possession, and the holder of the adverse title out of possession, the litigation of such adverse title would not be in the nature of an action for the recovery of real property, or give a right to a jury; and finally, that as the uniting of such causes of action is a matter of choice, and not of necessity, the mortgagee cannot, by uniting, deprive either defendant of any right he would be entitled to in case the actions were separately brought. This last remark is applicable to the objection, that if the holder of the adverse title be in possession the action is tantamount to an action for the recovery of the possession, in which the statute gives the defendant a right to two trials.

To conclude upon this question, it seems to us, that a foreclosure suit is, as to one branch, in the nature of a proceeding *in rem;* that the aim and scope of such a proceeding is to seize the *rem* and convey it, discharged of all claims and liens; that the objections formerly existing to the adjudication of adverse titles, on account of the jurisdiction of the court, and the form of action, have been done away with; that the litigation of an adverse title, is as truly and closely connected with the right to subject the real estate to the payment of the plaintiff's mortgage, as the determination of the validity and extent of other liens, and that the joinder of the two is therefore authorized by the statute. We come to this conclusion with hesitation, because of the course of decision elsewhere; but it seems to us justified by the statute, and it upholds a practice which has become common in this state.

III. Was the mortgagor's title in fact paramount? Or perhaps more correctly, does the record show that the court erred in holding it paramount? The testimony was as follows: As evidence of plaintiff-in-error's title, a receiver's

3. Act for sale of school lands, and amendments.

receipt was offered, dated 23d October 1873, acknowledging the receipt from James De Long, mayor of the city of Independence, "for the several use and benefit of the inhabitants thereof," of $100, being in full for a tract of eighty acres, in which it is admitted were embraced the lots in controversy; and also, a chain of conveyances from De Long to plaintiff in error. And as evidence of the mortgagor's title, though offered in evidence by the plaintiff in error, were a petition filed in the probate court of Montgomery county on the 12th of July 1871, by the city of Independence, by E. E. Wilson, its mayor, seeking to purchase the land as school lands, and for the benefit of the occupants; an order of said court of date 5th October 1871, that said Wilson, mayor, etc., be allowed to purchase said lands at the appraised value "in trust for the settlers, occupants, and inhabitants of said city, with improvements;" and a patent from the state of Kansas to E. E. Wilson, dated 28th October 1871, and a conveyance from Wilson to the mortgagors. This was all the testimony bearing on the question of title. The land was in section 36. The patent was to E. E. Wilson personally, and not as mayor, trustee, or for the benefit of or in trust for any persons—does not recite or refer to the petition and order—but simply recites that he has purchased the land from the county treasurer, according to the provisions of the act of 1864, and has paid the full amount as appears from the certificate of the county clerk of Montgomery county.

The validity of this patent to Wilson, is challenged on several grounds. It is said that it is void upon its face, because purporting to be issued under authority of a statute no longer in existence. It recites that it is issued in accordance with the provisions of an act of 1864, entitled "an act to provide for the sale of school lands," etc. And we think that that act, as an entirety, was still in force at the time of the issue of the patent, and was the act under which it was issued. The act was continued in force in the revision of 1868. (Gen. Stat., p. 941.) And the acts of 1870 and 1871, (laws of 1870,

p. 228; laws of 1871, p. 315,) were simply amendments of particular sections. The original act, as a whole, was never repealed. It was only amended, and that too only in a few of its sections. The amendments became part of the original act. And while it might have been more strictly accurate to say, "the act of 1864, and amendments," yet the defect, if defect it be, is not one that affects the validity of the instrument. Again, it is said that it was issued without authority of law; that the petition was by the city of Independence, and that the statute authorized no purchase by such a party; that the order allowed E. E. Wilson to purchase in trust for the occupants, etc., and that the act allowed only purchases by parties in their own right; and finally, that the patent does not follow the petition, or order, as it grants the land to Wilson personally, and not in trust for any one. Now whether, if it affirmatively appeared that the patent was based upon this petition and order, it would be open to collateral attack, we need not inquire. It may be that no one but the state, or some purchaser from the state, could question its validity. But be that as it may, the patent is valid upon its face. It does not appear from anything in it, that it was based upon or in any manner connected with the proceedings in the probate court. There was no testimony showing or tending to show that there were not other proceedings had by Wilson, personally, in that court, or that these proceedings by him as mayor or trustee had not been set aside or superseded in that court by his personal petition. Those proceedings were not offered by the mortgagee in support of the patent, but by the plaintiff in error in attack upon it; and it devolved upon her to show, either by the papers themselves, or evidence *aliunde*, that the patent was based upon those proceedings, before any question of their sufficiency to sustain it is before the court.

Again, it is said that the state had no title, because, before the government surveys, a town-site had been laid out and occupied on this land, and that the receiver's receipt is conclusive upon this question. We think as the record

**4. School lands; 36th sections.** stands we must hold adversely to this claim. In the arguments of counsel are copied certain letters from the Commissioner of the Land-Office, and we have since been favored with newspapers containing a letter from the Secretary of the Interior; but the only matter before us as *evidence* against the title apparently conveyed by the patent, is the mere receiver's receipt, executed nearly two years after the patent. *Prima facie*, section 36 passed to the state as school lands. (Act of admission, Gen. Stat., p. 67, § 3; 16 U. S. Stat. at Large, 362, § 12.) The state, treating the title as in itself, conveyed it by patent. Unless "sold, or otherwise disposed of," is the language of the grant, in the act of admission. Whoever would claim as against the apparent grant of this section *eo nomine*, must establish the exception. He must show that the land was previously "sold or otherwise disposed of." Does the mere issue of a receiver's receipt to a third party, nearly two years after the patent, without other proof of any examination or inquiry before the land officers, or of any notice to the parties claiming under the patent, or to the state, or to parties in possession, or anybody else, establish the exception? We think not. Conceding all that may be claimed for the land-officers, that they constitute a tribunal to adjudicate upon such questions, and that its decisions upon matters of fact are conclusive, yet it is certainly an inferior tribunal. There is no presumption of notice to adverse parties, and an *ex parte* investigation can certainly conclude the rights of no third parties. We go no further in our inquiry than this. We do not discuss questions which might perhaps fairly be noticed; for we are advised by letters and papers outside of this case, that there is a serious question, involving large interests, between parties holding under the patent from the state, and those holding under conveyance directly from the United States, a question we do not care to decide until the whole mater can be fully presented. We simply decide, first, that the patent is not void upon its face, because purporting to be issued under authority of the act of 1864; second, that it is not

31—20 KAS.

shown to have been based upon the petition and order presented in the record; and third, that the *prima facie* title conveyed by it is not avoided by the mere production of a receiver's receipt issued nearly two years thereafter.

Upon the whole case then, as it stands before us, we see no error, and the judgment will be affirmed.

VALENTINE, J.: I concur in the result reached by my brother BREWER, and in the judgment to be rendered; but am not prepared to say that I concur in all reasons given by him for such result.

HORTON, C. J.: I dissent from so much of the foregoing opinion as decides that *adverse and paramount title* may be litigated in an action to foreclose a mortgage. The decision is against authority, and will be a surprise to the profession. All the title a mortgagee can obtain by a foreclosure, is the title of the mortgagor, and it is scarcely fair to compel him, for the benefit of others, to be at the expense of litigating and settling prior and paramount titles to property on which he has loaned a few dollars. I fear that complications may result from the effect of the decision which will be greatly unfortunate to suitors. In support of my view, I refer to the authorities cited in the opinion, and the cases in 2 Jones on Mortgages, sec. 1440.