### COHEN et al. v. SOLOMON et al.

(Circuit Court, D. Kansas, Second Division. March 5, 1895.)

1. FORECLOSURE — DETERMINATION OF ADVERSE CLAIMS TO MORTGAGED PROP-ERTY.

One S. mortgaged certain lands owned by him, to B. Subsequently the property became delinquent for taxes, and was sold therefor, and a certificate of purchase issued on the sale, and assigned by the purchaser to one W., a brother-in-law of S. While W. held such tax certificate, and the lien evidenced thereby, a suit was commenced, in the federal court, by the executors of B. to foreclose the mortgage made by S.; and, while this foreclosure suit was pending, W. brought suit in a state court to quiet his title to the land under the tax certificate, making service on the mortgagor and mortgagee by publication, and obtaining a decree by default, quieting title in him. The representatives of the mortgagee first learned of the proceedings in the state court after such decree; and they then brought in W. as a party to the foreclosure suit, praying to have the tax title set aside. *Held,* that the court had jurisdiction in the foreclosure suit to determine and enforce all W.'s rights under his tax certificate, as well as the validity of his tax title.

2. COURTS—JURISDICTION—WHEN EXCLUSIVE.

*Held,* further, that the federal court first obtained jurisdiction of the matter in dispute, to wit, the mortgaged premises and the rights of the parties thereto; and, its jurisdiction being thereafter exclusive, the proceedings in the state court were without jurisdiction, and should be set aside as void.

This was a suit by Josiah Cohen and others, as executors of one Bernd, to foreclose a mortgage given by the defendant Solomon, and to have an alleged tax title to the mortgaged premises in defendant Wallenstein set aside, as well as a mortgage made by Wallenstein to the defendant Alexander. Wallenstein filed a cross bill for the foreclosure of the latter mortgage. The cause was heard on the pleadings and proofs.

Henry Wollman and Harris & Vermilion, for complainants.
W. E. Stanley and T. B. Wall, for defendants.

WILLIAMS, District Judge. In this case, Hardy Solomon, being the owner of the premises in question, with his wife, executed a mortgage upon the property to Bernd, the complainants' testator, which mortgage is by this suit sought to be foreclosed. At the time suit was commenced, the property had become delinquent for taxes for one year, and had been sold, and a certificate of purchase issued upon the tax sale. Subsequently the holder of the tax certificate of purchase brought suit in the state court of Kansas to quiet his title to the premises in controversy, obtained service against the mortgagee and mortgagor by publication under the state statute, and afterwards obtained a decree in the state court by default, quieting title in him, as against the said parties defendant thereto. The complainants herein, becoming apprised of the proceedings in the state court suit for the first time after the said decree was obtained, thereupon filed a supplemental bill of complaint in this suit, making the plaintiff in the said state court suit and his assignee parties defendant, and praying that the said tax title may be set aside. It is herein stipulated and agreed that the said tax deed is voidable under the laws of Kansas, where the lands lie. By the terms of the said mortgage, it is made the duty of the mortgagor to pay all assessments on the property. It is agreed that the assignee of the certificate of purchase, Wallenstein, is the brother-in-law of the mortgagor, Solomon. Wallenstein is the party who brought suit to quiet title in the state court.

The main question is as to the effect of the said suit brought in the Kansas court. At the time this suit was commenced and Solomon and wife made parties defendant thereto, Wallenstein held only the lien or equitable title of a purchaser at a tax sale to the premises in controversy. Having this lien or claim upon the property involved in the litigation, he was charged with constructive notice of the pendency of this suit, and it was incumbent on him to apply and be made a party to this suit, in which he could have enforced any claim he might have to the mortgaged premises.

The supreme court has several times held that a tax title to the mortgaged property may be litigated, enforced, or set aside in the foreclosure suit.

In Mendenhall v. Hall, 134 U. S. 559, 10 Sup. Ct. 616, it is held that in a suit to establish a mortgage, and for a sale thereunder, it is competent to unite as defendants both the mortgagor and the party claiming the property adversely to the lien of the mortgage by virtue of proceedings for a sale for taxes had subsequently to its execution. Justice Harlan, speaking for the court, says:

"If the plaintiff was entitled to have the property sold in satisfaction of the debt secured by the mortgage, it was his right to have it sold, freed from any apparent claim thereon wrongly asserted by the holder of the tax title. Such relief could not be had without making the latter a party to the suit."

Again, in Hefner v. Insurance Co., 123 U. S. 747, 8 Sup. Ct. 337, the supreme court, by Justice Gray, examine this question, collect the authorities holding both ways, and decide that:

"Upon principle, it was within the jurisdiction and authority of the court, upon a bill in equity for the foreclosure of the plaintiff's mortgage, to determine the validity or invalidity of Callanan's tax title; and he was a proper, if not a necessary, party to such bill."

This doctrine is so held in the case of a tax title arising, as does the present one, after the date of the mortgage, although recognizing the general rule that:

"As a general rule, a court of equity, in a suit to foreclose a mortgage, will not undertake to determine the validity of a title prior to the mortgage and adverse to both mortgagor and mortgagee, because such a controversy is independent of the controversy between the mortgagor and mortgagee as to the foreclosure or redemption of the mortgage, and to join the two controversies in one bill would make it multifarious."

Wallenstein could have enforced all his rights under the certificate of purchase, and under the tax deed, which he obtained soon after the commencement of this suit, by becoming a party hereto, and appealing to this court for his remedy, if he had any. Not having chosen to do so, the inquiry arises whether it was competent for him to obtain the relief he sought through the action of the state court. The practical effect of the course pursued, if allowed to have full operation, has been to utterly defeat the remedy sued for in this tribunal, nullify its action, and remove from its cognizance the very subject-matter before it. Can this be done consistently with the relative powers of courts of different jurisdictions, the independence allowed to each, and the harmony that should exist among them? No principle is more firmly entrenched in the law than the doctrine that, when one court acquires jurisdiction and power over the res, no other court can interfere with its possession or control. This doctrine has been affirmed and applied by the supreme court in a long line of adjudications, which have established this as one of the cardinal principles governing the proceedings of courts. Heidritter v. Oilcloth Co., 112 U. S. 294, 5 Sup. Ct. 135; Wiswall v. Sampson, 14 How. 52; Peale v. Phipps, Id. 368; Hagan v. Lucas, 10 Pet. 400; Williams v. Benedict, 8 How. 107; Pulliam v. Osborne, 17 How. 471; Taylor v. Carryl, 20 How. 583; Youley v. Lavender, 21 Wall. 276; Bank v. Calhoun, 102 U. S. 256; Barton v. Barbour, 104 U. S. 126; Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355. In these cases the general doctrine is laid down that where one court has acquired the custody or possession or control of the subject-matter of the controversy through its receiver or marshal, by writ of attachment or other process, no other court can in any manner interfere with that possession or control. Is the principle therein declared broad enough to embrace the present case? Here suit is brought to foreclose a mortgage, in which the court has power to adjudicate all liens and claims against the res, ascertain their amount, order a sale of the property, confirm the sale, direct a deed of conveyance to the purchaser at the sale, and, by its writ of assistance, remove the occupant, and place the purchaser in absolute possession of the property. Not only so, but the court, moreover, may, at any time when it deems it equitable and right so to do, appoint a receiver of the property pending the suit,

and thereby assume actual legal custody of the same through its officer.

While the question thus presented is probably a new one in some of its aspects, it seems to involve no unreasonable extension of the recognized doctrine. In Wallace v. McConnell, 13 Pet. 136, this principle was applied in the case of an ordinary action upon a promissory note, brought in the federal court, where the state court in Alabama had issued a garnishment against the defendant, and thereby sought to apply a portion of the indebtedness due on the note to satisfy the claim attempted to be enforced by attachment proceedings in the state court. Justice Thompson, in delivering the opinion of the court, says:

"The next point presents the question as to the effect of the proceedings under the attachment law of Alabama, as disclosed in the plea. The plea shows that the proceedings on the attachment were instituted after the commencement of this suit. The jurisdiction of the district court of the United States and the right of the plaintiff to prosecute his suit in that court having attached, that right could not be arrested or taken away by any proceedings in another court. This would produce a collision in the jurisdiction of courts that would extremely embarrass the administration of justice. If the attachment had been conducted to a conclusion, and the money recovered of the defendant before the commencement of the present suit, there can be no doubt that it might have been set up as a payment on the note in question. The attaching creditor would, in such case, acquire a lien upon the debt binding upon the defendant, and which the courts of all other governments, if they recognize such proceedings at all, could not fail to regard. If this doctrine be well founded, priority of suit will determine the right. The rule must be reciprocal. And, where the suit in one court is commenced prior to the institution of proceedings under attachment in another court, such proceedings cannot arrest the suit. And the maxim 'Qui prior est tempore portior est jure' must govern the case. This is the doctrine of this court in the case of Renner v. Marshall, 1 Wheat. 216, and also in the case of Beaston v. Bank, 12 Pet. 102, and is in conformity with the rule that prevails in other courts in this country, as well as in the English courts, and is essential to the protection of the rights of the garnishee, and will avoid all collisions in proceedings of different courts, having the same subject-matter before them. Embree v. Hanna, 5 Johns. 101; Bowne v. Joy, 9 Johns. 221, and cases there cited."

The principle of this case would seem to settle the main controversy in this. Here the subject-matter of the suit in this court is assuredly the mortgaged premises and the rights of the parties thereto. The subject-matter of the suit in the district court of Sedgwick county was the same. No clearer instance could be conceived of a wresting from this court of the very subject-matter before it than would occur in this case if the action of the state court was permitted to stand. A suit commenced for the sole purpose of applying property to the satisfaction of a debt would thus be absolutely defeated and rendered abortive by the action of another court commenced after this suit was instituted. All sense of comity and propriety in the relations of courts is wounded by such proceedings. While it is true that there is no receivership in the present case, and the actual possession of the property in litigation has not been interrupted in fact, still it is also true that a foreclosure suit is, to some extent, in the nature of a proceeding in rem, and the aim and scope of such a suit is to seize the rem, and convey it discharged of all liens and claims. Brewer, J., in Bradley v. Parkhurst, 20 Kan. 462.

In Heidritter v. Oilcloth Co., 112 U. S. 294, 5 Sup. Ct. 135, the court held that:

"When the object of the action requires the control and dominion of the property involved in the litigation, that court which first acquires possession, or that dominion which is equivalent, draws to itself the exclusive right to dispose of it for the purposes of its jurisdiction."

In that case the court was considering the effect of the attempt in the state court to enforce a mechanic's lien upon property which had been proceeded against as for a forfeiture under the revenue laws in the federal court. Says Justice Matthews, quoting Justice Miller:

"The case becomes in its essential nature a proceeding in rem. While the general rule in regard to jurisdiction in rem requires an actual seizure and possession of the res by the officer of the court, such jurisdiction may be acquired by acts which are of equivalent import, and which stand for and represent the dominion of the court over the thing, and in effect subject it to the control of the court."

Language could hardly be employed more aptly to describe the attitude of this court towards the mortgaged premises herein involved. Says Matthews, J., continuing:

"This may be by the levy of a writ, or the mere bringing of a suit. * * * The land might be bound without actual service or process upon the owner, in cases where the only object of the proceeding was to enforce a claim against it specifically, of a nature to bind the title. In such cases the land itself must be drawn within the jurisdiction or the court, by some assertion of its control and power over it. This, as we have seen, is ordinarily done by actual seizure, but may be done by the mere bringing of a suit in which the claim is sought to be enforced, which may by law be equivalent to a seizure, being the open and public exercise of dominion over it for the purpose of the suit."

In Union Trust Co. v. Rockford, R. I. & St. L. R. Co., 6 Biss. 197, Fed. Cas. No. 14,401, the federal court had dismissed a bill. Afterwards a bill was filed in the state court, and a receiver of the property involved in both suits appointed. Then the dismissal in the federal court was set aside, and a supplemental bill filed, and the federal court, Blodgett and Drummond, JJ., held that:

"The proper application of the rule that the court first taking cognizance of the controversy is entitled to retain jurisdiction to the end of the litigation, and incidentally to take the possession of and control the res,—the subject-matter of the dispute,—to the exclusion of all interference from other courts of co-ordinate jurisdiction, does not require that the court which first takes jurisdiction of the case shall also first take, by its officers, possession of the thing in controversy, if tangible and susceptible of seizure; for such a rule would only lead to unseemly haste on the part of officers to get the manual possession of the property, and, while the court first appealed to was investigating the rights of the respective parties, another court, acting with more haste, might, by a seizure of the property, make the first suit wholly unavailing."

In Gaylord v. Railway Co., 6 Biss. 286, Fed. Cas. No. 5,284, Drummond, J., affirms the same doctrine. In that case the bill filed in the federal court was amended, and, between the date of the filing of the bill and the amendment, another creditor instituted a suit in the state court, and had a receiver appointed, who took possession. The court held that the only question that arises is whether the federal court had jurisdiction. If it had, then the principle applies that no other court of concurrent jurisdiction could interfere with the

res, which was the subject-matter of the controversy. Drummond, J., says:

"We think that there is no other safe rule to adopt, in our mixed system of state and federal jurisprudence, than to hold that the court which first obtains jurisdiction of the controversy, and thereby of the res, is entitled to retain it until the litigation is settled. * * * It is not material that a receiver appointed by the state court had first taken actual possession of the property, provided the federal court had the prior right to control the res."

In this case, inasmuch as Wallenstein, the holder of the tax title, commenced his suit in the state court to have his title adjudicated upon and quieted, against the parties to this suit, after this suit had been begun, and the subject-matter thereof brought under the dominion and control of this court, for the purpose of adjudicating the rights of the parties to this suit thereto, and of determining the nature and extent of the claim of the mortgagee to the property, and of subjecting it, if found liable thereto, to sale and conveyance to meet and discharge the said claim, and of delivering it into the possession of the purchaser at the sale, we are of the opinion that this case is comprehended within the rule hereinbefore laid down and clearly established: That the state court was without jurisdiction to entertain and determine said suit, and that all its proceedings therein are null and void; that the said tax title be, and the same hereby is, set aside as void; and inasmuch as the defendant Alexander, the grantee of the tax title, is equally charged with constructive notice of the pendency of this suit, and stands in no better light than his assignor, Wallenstein, that the said tax title is void in his hands; that the cross bill of Wallenstein, brought to foreclose the mortgage executed to him by Alexander upon the transfer of said tax title, be, and the same hereby is, dismissed; and as it is agreed between the parties that the mortgage which this suit was originally commenced to foreclose was executed and assigned to the complainants' testator, as alleged in the bill, and that the amount claimed therein is due, it is further decreed that the said complainants have a decree for the said amount of their said mortgage, and foreclosing the same according to law.