## UPJOHN v. MOORE
(No. 1761; Nov. 21, 1932; 16 Pac. (2d) 40)

The cause was submitted for the appellant upon the brief of *Raymond & Diefenderfer*, of Newcastle, Wyoming.

The case was submitted for respondents upon the brief of *Metz, Sackett and Metz,* of Sheridan, Wyoming, and *Otis Reynolds,* of Sundance, Wyoming.

BLUME, Justice.

In the instant case, the plaintiff brought an action to foreclose a mortgage executed by the defendants Moore and wife, owners of the land mortgaged. He further alleged that after the execution of such mortgage Charles E. Louis became the holder of a tax title of the lands in controversy, but that such title, for various reasons alleged in the amended petition, is invalid, and that he never came into possession of the lands, such possession having at all times been held, and is being held, by the defendant Moore or his tenant. Plaintiff, accordingly, prayed that the mortgage be foreclosed and that the tax title of defendant Louis be declared to be invalid, but that he be allowed the amount of taxes paid, together with interest, etc. The court rendered judgment as prayed, and the defendant Louis has appealed, presenting as the only question whether a party seeking to foreclose a mortgage by suit may join defendants who claim title to the land as tax-title owners adversely to the mortgagor defendant, the adverse claimants not being parties to the mortgage. This point was raised, though perhaps imperfectly, by demurrer, by answer and upon the trial of the case. Whether it was sufficiently raised is a question as difficult of solution as the main question herein, and hence we shall assume that it was, and proceed to consider the point raised herein by the appellant.

The authorities on the point are in direct conflict, some holding that the validity of the tax title may be litigated in an action to foreclose a mortgage, and others holding the contrary. 42 C. J. 55; Jones on Mortgages (8th Ed.) Sec. 1794; Wiltse, Mortgage Foreclosure (2nd Ed.) Sec. 390. The latter view, that contended for by appellant, is upheld in Roberts v. Wood, 38 Wisc. 60; Brown v. B. & L. Association, 46 Fla. 492, 35 So. 403; Tinsley v. Mines Com-

pany, 20 Colo. App. 61, 77 Pac. 72, and some cases from Illinois. It is also upheld in the case of Odell v. Wilson, 63 Cal. 159. But that case seems to be in conflict with Kohner v. Asshenauer and Wife, 17 Cal. 578, which was an action to foreclose a mortgage executed by the husband, and in which it was said that "if the wife claimed the premises as her separate property by virtue of the previous conveyance from him, that circumstance was sufficient to justify the plaintiff in making her a defendant." In White v. First German etc. Church, 8 Ohio Dec. 158, the common pleas court upheld appellant's contention. But that case is contrary, we think, to United States Mtg. & T. Co. v. Anderson, 20 C. D. 491, affirmed 86 O. S. 320, 99 N. E. 1120, 87 O. S. 484, 102 N. E. 1118; Western Land Co. v. Buckley, 3 Nebr. (Unoff.) 776, 92 N. W. 1052, and Hurley v. Cox, 9 Nebr. 230, 2 N. W. 705, are also sometimes cited in support of the contention here made by the appellant, but these cases are not in point, although in the last cited case there is a dictum in appellant's favor. Williams v. Cooper, 124 Cal. 666, 57 Pac. 577, merely decides that the holder and claimant under a tax title is not a necessary party to an action of foreclosure of a mortgage, although in that case, too, there is dictum similar to that in Hurley v. Cox. The New York rule will be mentioned later.

The cases which hold that a tax title cannot be litigated in an action of foreclosure of a mortgage are generally based on the rule stated in 42 C. J. 55, that a person setting up a claim of title to the mortgaged premises adverse and paramount to that of the mortgagor, and not derived from him, is not a proper party to the foreclosure suit. Thus in McAlpine v. Zitzer, 119 Ill. 273, 10 N. E. 901, 902, the court, speaking of previous decisions announcing this rule, said:

"These cases proceeded upon the general, well understood rule, that mere legal titles are for trial and determination in courts of law, and that in a suit in chancery for the foreclosure of a mortgage, the independent legal title of a third person, which is adverse and paramount, should not be drawn into adjudication there."

In Brown, et al. v. Building and Loan Association, 46 Fla. 492, 35 So. 403, 404, the court, while stating that some of the courts have been more liberal in cases involving tax titles, also states, quoting from other authorities, the reason for not letting tax titles to be thus litigated, as follows:

"A court of equity is not an appropriate tribunal, nor is a foreclosure suit a suitable proceeding for the trial of claims to the legal title which are hostile and paramount to the interests and rights and titles of both mortgagor and mortgagee."

The objection against joinder accordingly is, first, that a legal title ought not to be litigated in an equity suit, if, secondly, that title is paramount and hostile to that of the mortgagor, and is not derived from him. The rule, of course, finds its origin in the time when courts of equity and courts of law were distinct, and when it was generally held that a court of equity was not the proper court, or as stated by some courts, had no jurisdiction, to settle the title to lands, unless incidental to a complete adjudication of the controversy. 21 C. J. 63, 65; Lange v. Jones, 5 Leigh (32 Va.) 192. But there are no courts of law, as distinguished from courts of equity, in this state, or, generally, in the Code states. Forms of action are abolished. The same court, if one of general jurisdiction, administers both law as well as equity. Hence an objection that the court has no jurisdiction to try a legal title does not lie. And whether or not a tax title should be litigated in an action of foreclosure of a mortgage seems to involve but

procedural rules relating to joinder of parties, and, in some cases, to the mode of trial with or without a jury. The rules as to joinder of parties in an action at law were formerly different from those prevailing in suits in equity. In an action at law "no one could be plaintiff unless he was alone or jointly with the co-plaintiffs entitled to the whole recovery, nor a defendant unless he was alone or jointly with the co-defendants liable to the entire demand." Pomeroy, Equity (4th Ed.) Sections 113, 114. But it was different in an equity action. Pomeroy, Code Remedies, (5th Ed.) Sec. 161, says:

"The grand principle which underlies the doctrine of equity in relation to parties is, that every judicial controversy should, if possible, be ended in one litigation; that the decree pronounced in a single suit should determine all rights, interests and claims, should ascertain and define all conflicting relations, and should forever settle all questions pertaining to the subject matter."

Turning to our statute (Rev. St. 1931), Section 89-514 provides that "any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of a question involved therein." Other sections evince a like purpose, and we said in Bamforth v. Ihmsen, 28 Wyo. 282, 300, 204 Pac. 345, 205 Pac. 1004, that the above and other sections of the Code indicate that it was the idea of the makers of the Code to authorize in one action the adjudication of the rights of the parties in the subject of the action, as far as it could properly be done. And these sections indicate that the legislature in effect adopted the equity doctrine in relation to parties. Pomeroy, Code Remedies, Sections 50, 113, 161. In fact, Pomeroy on Eq. Jur. Sec. 116, states that under the reformed American procedure, where carried out in its true spirit, actions at law and suits in equity

have been amalgamated, except that in some instances the action is triable to a jury, and in others not.

These general principles and rules must be borne in mind in attempting to reach a correct solution of the question before us. They seem to be broad enough to permit — unless countervailing reasons hereafter mentioned place a limitation — the trial of legal titles in the one civil action which with us has taken the place of actions at law and suits in equity, and to permit the joinder of all interested parties in actions like that at bar and the adjudication of the conflicting interests appearing therein. Cases from states which have not adopted the reformed procedure to the extent that we have, cannot have controlling effect herein. These general principles have not always been carried to their logical conclusion even in Code states. That is not to be wondered at. Any stage of transition is apt to produce varying opinions. The present is the product of the past, and to cut the Gordian knot is not always easy, or for that matter, always desirable. During such period, it often becomes, or seems to become, a serious question how far to cling to the past; nor is it always easy to grasp the full meaning or spirit of innovations. Hence conflicting opinions. We are, possibly, sufficiently removed, at this time, from the beginning of the period of transition, so as to enable us to interpret the spirit of the innovations more correctly than would, perhaps, have been possible for our predecessors a half-century ago.

Evidently in full accord with Pomeroy, the Supreme Court of Indiana, in Masters v. Templeton, 92 Ind. 447, a case not wholly in point herein, however, said on the subject before us:

"Our code provides that 'Any person may be made a defendant who has, or claims, an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the questions

involved.' This is a very comprehensive provision, and was meant to confer authority to settle in one suit all conflicting claims to property involved in the litigation. The rule is a wise and salutary one, for it enables the court to fully adjust all equities, to determine and protect all rights, and to put an end to litigation concerning the subject-matter of the suit by one decree. Multiplicity of actions is thus prevented, full force and effect secured to judicial decrees, and judicial sales made operative and effective. It has long been the law of this State, that conflicting claims of title may be settled, and questions of priority determined, in foreclosure suits, whenever the proper issues are tendered. * * * Prior to the adoption of the code system there was some reason for holding that the question of title could not be adjudicated in a foreclosure proceeding; for questions of title were triable only by courts of law, while the question of a right to a foreclosure was cognizable only by courts of chancery, and there was thus a conflict of jurisdiction whenever a legal title was asserted. This can not happen under the code, where both law and equity jurisdiction are vested in one tribunal, where provision is made for bringing into court all parties interested, either in the property or the controversy, and where ample authority is conferred to determine all rights and adjust all equities in one suit.''

In Kansas it has been uniformly held not only that tax titles, but also other independent titles, may be litigated in an action of foreclosure of a mortgage, and that whether the title was acquired before or after the execution of a mortgage. Bradley v. Parkhurst, 20 Kans. 462; Broquet v. Warner, 43 Kans. 48, 22 Pac. 1004, 19 A. S. R. 124; Provident Loan Trust Co. v. Marks, 59 Kans. 230, 52 Pac. 449, 450, 68 Am. St. Rep. 349. The opinion in the Bradley case was written by Mr. Justice Brewer, who summarized the holding of the court as follows:

''To conclude upon this question, it seems to us, that a foreclosure suit is, as to one branch, in the nature of a proceeding in rem; that the aim and scope of such a proceeding is to seize the rem and convey it, discharged of all claims and liens; that the objections formerly existing to

104

the adjudication of adverse titles, on account of the jurisdiction of the court, and the form of action, have been done away with; that the litigation of an adverse title, is as truly and closely connected with the right to subject the real estate to the payment of the plaintiff's mortgage, as the determination of the validity and extent of other liens, and that the joinder of the two is therefore authorized by the statute. We come to this conclusion with hesitation, because of the course of decision elsewhere; but it seems to us justified by the statute, and it upholds a practice which has become common in this state.''

In the Marks case, the court said:

''But it is said that the holder of the title paramount is not a proper party to an action to foreclose a mortgage, and that the District Court, for this reason, had no jurisdiction over Dolloff. Many authorities from other states are cited in support of this position. It is conceded by counsel for the plaintiff in error that not only in those states where the courts of law and equity are distinct, but also in most of the code states, this rule is recognized. * * * Whatever the course of decisions may be in other states we are entirely satisfied with the rule established in Kansas. The advantages accruing to litigants through a full determination in one action of all conflicting claims of title to the property which is the subject of litigation are so numerous and so great, and accord so thoroughly with the spirit of our laws, that we should not hesitate to stand alone in upholding the interpretation heretofore placed on our Code. Some of the courts seem to take the position that, although title paramount may not be litigated, the extent of the interest of the mortgagor at the time of the execution of the mortgage may be determined in the action to foreclose it. It is exceedingly difficult to trace any definite boundary between such an adjudication and a full determination of all adverse claims to the property. The practice of clearing up all clouds on the title, and entering decrees binding on all claimants, is so general and so advantageous that in this very action the fact that Marks, the defendant in error, in whose favor the lower courts have decided, claimed adversely to the plain-

tiff in error by title paramount in an action to foreclose the plaintiff's mortgage, seems to have been lost sight of.''

The thought underlying the cases heretofore cited which hold that a tax title, hostile and paramount to the mortgagor, should not be litigated in an action of foreclosure of a mortgage, seems to be that, in order that a title may thus be properly litigated, a privity should exist between the mortgagor and the holder of such title, and they further hold, directly or indirectly, that no such privity exists between a defendant who holds a tax title and a mortgagor, since such title is acquired from the state. Admitting, for the purposes of this opinion, that the Kansas rule is too broad and that policy and expediency require such privity, we think it may be fairly said to exist in a case in which, as in the case at bar, a tax title is acquired subsequent to the execution of the mortgage. That is substantially the holding of Wilson v. Jamison, 36 Minn. 59, 29 N. W. 887, 888, 1 Am. St. Rep. 635; Heffner v. Northwestern Life Ins. Co., 123 U. S. 747, 8 S. Ct. 337, 340, 31 L. Ed. 309; Randle, Admr. v. Boyd, 73 Ala. 282; Lyon v. Powell, 78 Ala. 351. To these cases should be added, we think, the case of Mendenhall v. Hall, 134 U. S. 559, 10 Sup. Ct. 616, 33 L. Ed. 1012. That case has been sought to be distinguished by reason of the fact that the plaintiff mortgagee charged that the tax title was acquired in collusion with the mortgagor, and it is admitted even in Illinois that in such event the holder of a tax title may be made a party to a foreclosure proceeding, since the title is then acquired under and from the mortgagor. McAlpine v. Zitzer, 119 Ill. 273, 10 N. E. 901. But we think that the Mendenhall case cannot be thus distinguished. The court's statement as to collusion with the mortgagor was made principally in connection with the discussion of the argument as to whether the tax-title holders claim should be set aside until the taxes, together

with the interest, had been paid. The court's ruling as to whether or not the holder of the tax title could be made a party to the foreclosure proceedings seems to rest on an independent ground. It was said:

"It was competent, under the practice in equity prevailing in the courts of the United States, and in order that full and adequate relief might be had, to unite in the same suit both the mortgagor and the party claiming the property adversely to the lien of the mortgage, by virtue of proceedings had subsequently to its execution. If the plaintiff was entitled to have the property sold in satisfaction of the debt secured by the mortgage, it was his right to have it sold freed from any apparent claim thereon wrongly asserted by the holder of the tax title. Such relief could not be had without making the latter a party to the suit."

In fact, the distinction sought to be drawn rests upon weak grounds. All the courts agree that a person acquiring a title from a mortgagor subsequent to the execution of a mortgage, may be made a party to the suit to foreclose the latter. 42 C. J. 49. We think it may fairly be said that a person acquiring a tax title subsequent to the execution of a mortgage acquires it from and through the mortgagor, assuming, of course, that the mortgagor is the owner of the land, whose duty it is to pay the tax. Usually the mortgagor expressly agrees to pay the taxes, as is true in the instant case. Here the mortgagor neglected to do his duty. The tax title came into existence by reason thereof. The situation is clearly illustrated by another line of cases. Courts seem to be agreed that a purchaser at an execution sale of the mortgaged premises under a judgment subsequent to the mortgage, is a proper party to a suit of foreclosure of the latter. 42 C. J. 50; Heffner v. Life Ins. Co., supra. It can hardly be claimed that while the title of such execution creditor is acquired from and through the mortgagor, the contrary is true in the case of a tax title. In the former case the state gives

the title through its judicial department and its administrative officers; in the latter case, too, the title is granted by the state, generally acting through its administrative officers. In either case the title is derived from the state, and in either case as the result of the non-action of the debtor. The only possible distinction that could be pointed out is that a tax is superior, and a judgment rendered subsequent to the mortgage, inferior to such mortgage. But even that distinction would seem to be eliminated in a case in which the execution creditor who has acquired title, claims that the mortgage is invalid. That the difference in the two classes of cases is of no importance is recognized in Heffner v. Life Insurance Co., supra. That case, too, is sought to be distinguished from one like that at bar, in view of the fact that the question arose collaterally. Still the court discusses the point on principle, and says in part:

"In all the cases heretofore referred to, the adverse title was prior to the mortgage foreclosed. But in the case at bar, the tax title, though adverse to the mortgage title, was not prior to it. The whole title in the land was in the mortgagor at the date of the mortgage, and the title under the tax deed, if valid, was subsequent in time, although paramount in right, to the title acquired under the mortgage and the decree of foreclosure. * * * On principle it was within the jurisdiction and authority of the court upon a bill, in equity for the foreclosure of the plaintiff's mortgage, to determine the validity or invalidity of Callahan's tax title, and he was a proper, if not a necessary party."

Then the court calls attention to authorities holding that a person acquiring title under a sale on execution may be made a party to a suit to foreclose a prior mortgage, and then proceeds:

"At the date of the plaintiff's mortgage, the entire estate in the land was in the mortgagor, and was included

in the mortgage. The subsequent assessment of the taxes created a lien upon that estate, which upon the sale for non-payment of the taxes passed to Callahan; but the mortgagor, so long as his right of redemption from that sale existed, still held the legal title, subject, first to the lien of taxes, and then to the mortgage. The deed afterwards executed by the county treasurer to Callahan, if valid, conveyed to him all the rights and interests, both of the mortgagor and of the mortgagee and vested in him a complete title, so that the mortgagor had no title and no equity of redemption, and the mortgagee no lien and no right of foreclosure. There would seem to be no less reason for making Callahan a party to the bill than if he had claimed under a conveyance from or judgment against the mortgagor of the mortgage since the date of the mortgage.''

That the holder of a tax title, subsequent to a mortgage, derives his title through the mortgagor is also recognized in Randle, Admr. v. Boyd, supra, in which the court holds that the holder of tax-title subsequent to a mortgage, may be made a party to the suit of foreclosure of the mortgage. The court said in part:

''This principle (of not litigating an independent title in a foreclosure proceeding) is evidently based upon the theory that a court of equity has no jurisdiction to try the validity of *mere legal titles*, which have no *privity of derivation or connection* with that of the mortgagor or mortgagee, but *is independent of and paramount to it.* Hence, in our opinion, it should be confined to such adverse claims of title as were derived from the mortgagor or mortgagee *anterior* to the date of the mortgage, or from a *stranger* either prior or subsequent to such time. * * * The claim of the demurrants is shown to be based on a *tax-title* acquired in the year 1873, several years after the sale of the land, and, therefore, after the creation of complainant's lien for the purchase-money. The important fact is, that it was not anterior to this date. It may be true that a purchaser at a valid tax-sale acquires not only the interest or right of the owner of the land to whom it is assessed, but a good title to the land

itself, free from the claims of all persons. Burrough on Tax, § 122, p. 346; Jones v. Randle, 68 Ala. 258. Yet it cannot be assumed that the mortgagor was not the owner of a good and perfect title, in the absence of proof to the contrary. It is very certain also that, as the greater always includes the less, a claimant under a tax-sale, after the execution of a mortgage, must claim to hold and own the equity of redemption as a component part of his tax-title, and to this extent there is a certain privity of title between them referable to the tax proceedings, which are primarily against the owner, who has a right to appear and defend in the probate court against any judgment of condemnation.''

In the case of Wilson v. Jamison, supra, the holder of a tax title was made defendant in a suit to foreclose a prior mortgage. The court held that the tax title was valid. The plaintiff then objected that the validity of the title could not be litigated in the foreclosure proceeding. But the court said:

''The case is distinguishable from that of Banning v. Bradford, supra (21 Minn. 308, 18 Am. Rep. 398), by the fact that the adverse title which is the subject of this adjudication was acquired subsequent to the mortgage. The original validity of the mortgage was not brought in question, but the tax-title, if valid, had the effect to relieve the land from the incumbrance of the mortgage, and to extinguish the right of the mortgagee to the remedy here sought; that is, to have the land sold for the satisfaction of his debt. Whether the lien of the mortgage had been thus extinguished, depended upon the validity of the tax-title. In an action in which it is sought to enforce the mortgage through a judgment for a sale of the premises, we recognize no impropriety in an adjudication as to the validity of the title asserted by the defendant, and which, if valid, has, in effect, superseded or extinguished the lien of the mortgage. Such a fact would be a sufficient reason why the mortgage should not be enforced by a decree for the sale of the premises.''

See also on this subject Cohen v. Solomon, (C. C.) 66 Fed. 411.

. We shall now proceed to consider the New York rule. In the case of Erie County Savings Bank v. Shuster, 187 N. Y. 111, 79 N. E. 843, 844, it was held that a holder of a tax title who is in possession of the property is not a proper party to an action to foreclose a mortgage, the court saying:

"It is equally clear that the defendants in this case, who were in possession under the tax title, were not proper parties to the action. Their title and possession cannot be assailed in an action to foreclose a mortgage, since they are entitled to defend their claim in a court of law in the usual way in which actions for the recovery of real property are tried. The defendants cannot be required to defend their title in an equitable action like this, but are entitled to have their rights passed upon by a jury in a court of law. It follows that the defendants have the right to object to have their title tried in this action."

Even if the holding were correct under the statutes of this state, it would not be in point in the case at bar, since the holder of the tax title herein was never in possession. Hence the mortgagee had no action, heretofore denominated at law, against him. Under the holding of Chesney v. Valley Live Stock Company, 34 Wyo. 378, 244 Pac. 216, 44 A. L. R. 1255 (and see Blackwell on Tax Titles, (4th Ed.) p. 569), he doubtless could have sued in a separate suit to have the tax title cancelled, and the same or substantially the same right doubtless existed under our declaratory judgment law. See Holly Sugar Corporation v. Fritzler, 42 Wyo. 446, 296 Pac. 206. We can see no good reason why a mortgagee could not, in the same suit, also ask the foreclosure of his mortgage. That he may do so is held in the case of Middletown Savings Bank v. Bacharach, 46 Conn. 513, and this is the rule as stated, by way of dictum, in the case of Chesney v. Valley Live Stock Company, supra. Furthermore, it is at least doubtful that a mortgagee should be deprived of his right which

he otherwise would have by the mere fact that a holder of a tax title in some way succeeds in obtaining the possession of the property. In Wofford v. Board, 44 Miss. 579, a suit to foreclose a mortgage, adverse claimants in possession were made parties. The court said:

"Ashraft and Owens are said to be in possession of the premises, setting up some sort of a claim to them. In order that the security might be fully available, the creditor had the right to bring these parties before the court so that their rights might be canvassed, and if they discovered a cloud, it might be removed. The creditor had a right to go before bidders, at the sale, with an estate disembarred of all conflicting pretended claims, so as to insure the market value of the property."

We may concede that when an adverse claimant is in possession the latter has the right to have his title tried to a jury. Sale v. Meggett, 25 S. Car. 72; Bradley v. Parkhurst, supra; Busenbank v. Park, (Kans. App.) 49 Pac. 682. But there is good reason to say that there is ordinarily no objection to such trial in an action to foreclose a mortgage. In Sale v. Meggett, supra, the defendant Klinck claimed adverse title both under a tax sale and a sale under execution. The court said:

"The defendant claimed title adverse to the plaintiff. He was made a party defendant, he appeared and answered without protest or objection, and in his answer he set up a legal defense. Thus the issue was made up and was on the docket for trial. Why could not that issue be tried under the practice and principle suggested above, by simply withholding for the time the equitable cause and entering upon the legal defense, with a jury, as in cases at law? * * * This mode of the trial of causes and defenses is claimed to be one of the excellences of the code practice, as it dispenses with multiplicity of actions and economizes in matters of costs and expenses. We think under the section of the code referred to above, Klinck was legitimately made a party defendant. In fact,

under the old equity practice being in possession, and claiming title adverse to the plaintiff, he was a proper party, so that the land, if ordered to be sold, might be sold free from a cloud overhanging it. * * * We concur with the Circuit Judge that Klinck's title is a jury question, of course under the charge of the judge as to the facts necessary to constitute title in a case of this kind; but we do not see why the case should be dismissed as to Klinck, in order to give him the right he demands. It would involve unnecessary expense and delay to proceed with the foreclosure and then let the purchaser contest Klinck's title in a separate action for possession. The parties are now all before the court, all questions at issue can be tried under the procedure allowed by the code, without violating Klinck's right to a jury.''

The case before us is one involving a matter of procedure. Whether an adverse claimant in a suit to foreclose a mortgage should or should not be made a party, involving merely the rule of multifariousness, is a question of expediency and policy (Holly Sugar Corp. v. Fritzler, 42 Wyo. 446, 467, 296 Pac. 206), even though in some cases the trial should be with a jury and in others without one, and the legislature of this state has, we think, settled that policy. The only serious objection that could be urged against joinder is that different questions should not be presented in the same case against different defendants. And an indiscriminate permission of joinder could, of course, be carried to the extent that the benefits would be more than overbalanced by the inconveniences. We do not think that this would be true in an action like that at bar, and that the joinder permitted herein was fairly within our statutory provisions on the subject. We need not in this case go as far as the Kansas courts, and hold that all adverse claimants, including prior claimants, and claimants under a stranger, may be made parties in such suit. But we think that in any event adverse claims, arising subsequent to a mortgage and directly or

indirectly under the mortgagor, including tax title claims, may, at the option of the plaintiff, be adjudicated in the suit in which the mortgage is foreclosed. Such action involves not merely the question of the execution of the mortgage, but also the extent of the right of the mortgagee. From the citations in this opinion, it will be noted that several courts have laid stress on the fact that a mortgagee is entitled to a sale which will give him a fair return. That principle applies not only to the mortgagee, but to the mortgagor as well. And even though in actual experience mortgagors often fail to see the fair value of the property realized at a sale, yet they should have that opportunity, and the actual experience in connection with such sales but emphasizes the advisability or necessity of adopting a view herein that will favor, rather than one that will hurt them.

The judgment of the trial court should accordingly be affirmed and it is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.