MORRISON v. HERRINGTON, *Appellant.*

Division One, March 5, 1894.

1. **Practice**: PLEADING: JOINDER OF CAUSES OF ACTION. A ˙plaintiff may unite in the same petition several causes of action, whether legal or equitable or both, where they arise out of the same transaction and are connected with the same subject of action. (R. S. 1889, sec. 2040.)

2. ————: EJECTMENT: AMENDMENT: EQUITY COUNT. A petition in ejectment may be amended by the addition of a count asking for the cancellation of certain deeds to defendant of the land in suit.

3. **Deed of Trust**: FORECLOSURE: TRUST: FRAUD. The evidence in this case *held* sufficient to sustain the finding (1) that the purchaser at a sale under the foreclosure of a deed of trust held the title in trust for the grantor, and (2) that the purchaser, at a sale under a distress warrant issued against a county treasurer for default as to county moneys, bought under an arrangement to defraud the holder of a deed of trust on the premises.

4. **Land**: SALE UNDER EXECUTION: PURCHASER. A sale under˙ execution, of land to which the execution debtor has only the legal title, and in which he has no beneficial interest, vests no title in the purchaser.

5. ————: COUNTY TREASURER: LIEN. Section 6736, Revised Statutes, 1879, making the bond of a county treasurer a lien on his real estate, does not apply to land in which the treasurer has no beneficial interest.

*Appeal from Sullivan Circuit Court.*—HON. G. D. BURGESS, Judge.

AFFIRMED.

*D. M. Wilson* for appellant.

(1) The first count of the amended petition contained a new, distinct, and entirely different cause of action from that stated in the original petition, and

appellant's motion to strike it out should have been sustained. *Lumpkin v. Collier*, 69 Mo. 170; *Parker v. Rodes*, 79 Mo. 88. (2) The amended petition having been filed on plaintiff's own motion, and without leave of court, should have been stricken out. R. S. 1889, sec. 2115. (3) Under the practice in this state, equity cases are substantially triable *de novo* in the supreme court; and this court is not bound by the finding of facts of the trial court, nor by its conclusions of law therein, but will exercise a supervisory control over both. *Blount v. Spratt*, 113 Mo. 48; *McElroy v. Maxwell*, 101 Mo. 294. (4) A review of the evidence in this cause, it is submitted, shows these facts to be true: *First.* That S. C. Hutchinson became the owner in fee of the land in controversy on March 14, 1885. *Second.* That there was no collusion between appellant and Clevenger, nor fraudulent intention to cheat respondent. *Third.* That the sale from Clevenger to appellant was *bona fide*, and the consideration named in the deed an actual and valuable one. If these conclusions be warranted by the evidence, this court should reverse the decree on the first count. (5) The bond of Hutchinson as *ex officio* collector was a lien on his lands owned at the time of its approval and recording, and extended to lands subsequently acquired. R. S. 1889, sec. 7590. *Wimpey v. Evans*, 84 Mo. 144. (6) The court erred in giving respondent's second declaration of law. The sale under the distress warrant and the deed from the sheriff to Clevenger did vest the title of the land in Clevenger. *First.* Because by the pleadings the distress warrant was admitted to have been legally issued, and all the proceedings had thereunder done according to law. *Second.* Because the land was the land of Hutchinson the principal in the bond; the bond was a lien on the land, and although the distress warrant may have been

void as to the sureties on the bond, yet in as much as it stood admitted that Hutchinson was a defaulter for the exact amount stated in the warrant, and at the time of the issuing of the warrant and levy on the land was still in office, the distress warrant was not void as to him. (7) The court erred in giving the third declaration of law asked by respondent, because there was no evidence showing that appellant purchased the premises in question at the sale under the distress warrant through the agency of Clevenger, and as a mere subterfuge to avoid payment of the Morrison mortgage. All the evidence was directly to the contrary.

*John P. Butler* for respondent.

BLACK, P. J.—This was an action of ejectment to recover eighty acres of land in Sullivan county. The petition as first filed contained one count in the usual form. Before the return term of the writ, the plaintiff filed an amended petition, the first count of which sets out the plaintiff's title and other matters, and prays for equitable relief, namely, that two deeds, one from the sheriff to Edward Clevenger, and the other from Clevenger to the defendant, be set aside and for naught held; the second count is the same as the original petition, that is to say, a count in ejectment. At the return term the defendant moved to strike out the amended petition, because it set up a new and different cause of action from that stated in the original petition, which motion was overruled, and the defendant excepted. Defendant then filed answer to both causes of action. They were both tried at the same time by the court, and the court rendered a decree setting aside the two deeds, and gave judgment for plaintiff for possession on the second count.

1. The court did not err in refusing to strike out the amended petition. It was held in *Lumpkin v. Collier*, 69 Mo. 170, that the plaintiff could not, by an amendment, change his cause of action from *ex contractu* to *ex delicto*, but that and the other cases cited by the defendant have no application to the case in hand. Here the plaintiff simply added a cause of action in equity to his ejectment count, and this he had a right to do. A plaintiff may unite in the same petition several causes of action, whether they be such as have been heretofore denominated legal or equitable, or both, where they arise out of the same transaction and are connected with the same subject of action. R. S. 1889, sec. 2040. Here the causes of action, one legal and the other equitable, arose out of transactions connected with the same subject of action. The parties being the same also, there was no misjoinder. Though the court could have granted full and complete relief on the equity cause of action, even to awarding a writ of possession, still it is quite common practice to join an ejectment count with an equity cause of action in such cases. There can be no doubt but the plaintiff had the right to file the amended petition. As no answer had been filed, it was not necessary to first obtain leave to file the amended petition. R. S. 1889, sec. 2102.

2. On the second of April, 1881, William J. Hutchinson executed a deed, whereby he conveyed the eighty acres in question to Mr. Moberly in trust to secure a debt of $550 due to Mr. Haley. The land was sold under this deed of trust on the fourteenth of March, 1885, and Samuel C. Hutchinson became the purchaser. It is alleged in the equity cause of action that Samuel C. purchased the land for his brother, William J. Hutchinson, and that Samuel C. never had any interest in it, save the bare legal title.

Samuel C. Hutchinson was elected treasurer of Sullivan county in November, 1884, for a term of two years, and at the expiration of that time was again elected for another like term. The county being under township organization, he became *ex officio* collector. He gave bond as such collector at the beginning of the first term, which was approved and recorded. By force of section 6736, Revised Statutes, 1879, this bond became a lien on his real estate.

When Samuel C. Hutchinson purchased the land on the fourteenth of March, 1885, at the trustee's sale, he made a temporarv loan to raise money to pay the purchase price. On the 1rst of May, 1885, about a month and a half after that purchase, he conveyed the same eighty acres to Mr. Darrow in trust to secure his coupon bond for $600, payable to James W. Morrison. He used the money thus raised in paying off the temporary loan before mentioned. Subsequently and on the twenty-second of February, 1886, he conveyed the eighty acres in question and another eighty acre tract to the defendant James S. Herrington for the consideration of $2,500. As a part of this consideration, Herrington assumed and agreed to pay the $600 debt secured by the before mentioned deed of trust to Darrow, and also a $700 debt secured by a deed of trust on the other eighty acres. The difference between these two debts and $2,500 was paid in cash to Samuel C. Hutchinson, who paid the difference between the $600 debt and the purchase price of the eighty acres in question over to his brother William. The defendant. Herrington made the purchase of the two eighties from Samuel C. Hutchinson by and through his uncle, Edward Clevenger, who was the agent of the defendant. in making the purchase. Defendant paid the $700 debt. as he had agreed. He also paid the annual interest on the $600 debt secured by the deed of trust to Darrow

as trustee on the eighty acres in suit down to the date of the sheriff's sale next mentioned. The plaintiff, John H. Morrison, became the owner of the $600 bond in June, 1888.

Samuel C. Hutchinson made default as collector for the first term of office to the amount of about $12,000, and on the fifth of November, 1888, the state auditor issued a distress warrant against him and the sureties on his bond for that amount. The sheriff levied this warrant upon and sold the two eighty acre parcels of land on the eighth of February, 1889, and Edward Clevenger became the purchaser at the price of $100 and received a sheriff's deed. In June of that year he conveyed both parcels to the defendant, James S. Herrington for a recited consideration of $1,500. It is these two deeds which the plaintiff had set aside under the equity cause of action. The averments made in the petition for that purpose are that Clevenger and the defendant for the purpose of cheating and defrauding the plaintiff out of the $600 debt which the defendant had agreed to pay, made an agreement whereby Clevenger was to and thereafter did purchase in the land at the sale under the distress warrant and then convey it to defendant.

After these transactions had been completed the defendant Herrington declined to pay the $600 debt held by plaintiff, secured by the deed of trust from Samuel C. Hutchinson to Darrow as trustee, and because of such default Darrow sold the property in September, 1889, and the plaintiff became the purchaser.

Two issues of fact still remain to be considered: *First*, did Samuel C. Hutchinson purchase the eighty acres in question at the sale made by trustee Moberly on the fourteenth of March, 1885, for himself, or did he purchase and hold the same in trust for his brother

William? *Second*, did Clevenger buy in the land at the sheriff's sale under the distress warrant pursuant to the alleged agreement with the defendant for the purpose of defrauding plaintiff out of the $600 deed of trust?

As to the first of these issues, the evidence shows that William J. Hutchinson, the grantor in the Moberly deed of trust, had no means and was in destitute circumstances, and could not pay the debt. He says his brother purchased the land for him and afterwards sold it to defendant Herrington at his request. Samuel testified that he purchased the land for his brother William; that to pay the purchase price he made a temporary loan, and in a month or two paid this loan by getting the $600 from Morrison and securing Morrison by the Darrow deed of trust on the same land. When he sold it to defendant he paid the cash received over to his brother. Says he used no money of his own in making the purchase. This evidence shows clearly that Samuel simply purchased and held the land for his brother. The only evidence opposed to this conclusion is that of Edward Clevenger. He says Samuel C. Hutchinson claimed to be the owner of the land; "that the title was in him," but he says he "knew the land matter was all mixed up between Samuel C. Hutchinson, his father and brother William."

As bearing on the other issue of fact it appears the defendant purchased the two eighty acre tracts from Samuel C. Hutchinson through his uncle Clevenger. Clevenger says he, as agent for defendant Herrington, assumed and agreed to pay the $600 debt on the eighty in question and the $700 debt on the other eighty. As to the sheriff's sale he says: "I got my nephew (Herrington) to move out from Pennsylvania and buy this land and I didn't want to see him have any trouble over it. I was advised to bid it in. I bid in both

·eighties at the sheriff's sale under the distress warrant, one at $60 and the other at $40. Herrington came to me before the sale and asked me if I had seen the paper; said the land was advertised to be sold. He then went to Milan to see about it. I came up on the day of sale and bought the land in." He says he kept the land about four months and then sold it to Herrington for $1,500. "Herrington paid some money and gave me a note for $800." He says Herrington did not ask him to buy in the land, and he did not tell Herrington he would buy it in. "I bought it in good faith—bought it for myself and no one else." Herrington testified that his uncle, Clevenger, bought the land from Samuel C. Hutchinson for him, that he paid the interest on the Morrison debt until the sale under the distress warrant. He then refused to pay principal or interest. As to this sheriff's sale he says: "I was at the sale under the distress warrant. I came up to Milan that morning. Did not know my uncle, Clevenger, was coming up. Did not ask him if he was going to buy the land in for me; had no such conversation. I afterwards bought the land of him. I considered he held the only good title to it; paid him $1,500."

Now, Mr. Clevenger says he did not want his nephew, the defendant, to get into difficulty about the land, and this statement is perfectly reasonable; for he had purchased the land for his nephew. But this statement can not be reconciled with that made in almost the next breath, namely, that he purchased in the land at the sheriff's sale for and on his own account and then sold it to his nephew. They both knew it was advertised for sale under the distress warrant, took advice as to the best way out of the difficulty, and were both present at the sheriff's sale, the defendant taking no steps to protect his own interest according to his statement. The evidence of Clevenger that he bought the

land for himself at the sheriff's sale, and then sold it to defendant for $1,500 is not entitled to any consideration. There can be no doubt but Clevenger bid in the land for his nephew. The trial court, with all the parties before it, found that Samuel C. Hutchinson never had any beneficial interest in this eighty acres. That court also found that the purchase by Clevenger in his own name at the sheriff's sale, and the conveyance by him to defendant was a mere contrivance to defraud the plaintiff out of his debt, the very debt which defendant had assumed and agreed to pay. These findings we approve.

With this result as to the facts little need be said as to the law of this case. As Samuel C. Hutchinson simply held the legal title to this land and had no beneficial interest in it, a sale of it under an execution against him would transfer no interest whatever. 1 Freeman on Executions [2 Ed.], sec. 173. For a like reason the bond given by Samuel C. Hutchinson as *ex officio* collector did not become a lien on the land.

Nor can the defendant say he is a purchaser under the distress warrant without notice that Hutchinson had no interest in the land. In the first place we are satisfied that Clevenger knew the land was in fact the property of William Hutchinson. Clevenger was the agent of the defendant in the purchase of the land, and notice to him was notice to the defendant. In the next place the purchase of the land by Clevenger at the sheriff's sale and the transfer of it to the defendant was a mere contrivance between the two to cut out the plaintiff's deed of trust. The defendant gained nothing by these manipulations. As to the deed of trust he stood after the sheriff's sale and deed from Clevenger to him just where he did before the sheriff's sale, that is to say, in duty bound to pay the $600 debt. The trial court, therefore, properly set aside the sheriff's

deed and the deed from Clevenger to defendant. With these deeds set aside the plaintiff had the title, and there was nothing to do but give judgment for plaintiff on the ejectment count.

3. During the trial the plaintiff put in evidence the bond given by Samuel C. Hutchinson to James W. Morrison for the $600, secured by the deed of trust from Hutchinson to Darrow, and dated the first of May, 1885; also a writing purporting to be an assignment of this bond by the administratrix of James W. Morrison to Mary E. Morrison, executrix of William J. Morrison, and a writing purporting to be an assignment of the bond by Mary E. Morrison, executrix of William J. Morrison, dated the twenty-seventh of June, 1888, to the plaintiff John H. Morrison. The defendant objected to both of these assignments; to the first, because there was nothing to show when it was made and because there was no evidence to show that the person who signed it was the administratrix of James W. Morrison; to the second, because it did not appear that Mary E. Morrison was the executrix of William J. Morrison. These objections were overruled and defendant excepted.

The above evidence was introduced in connection with the deed to the plaintiff, executed by the trustee, Darrow. This trustee's deed states that the sale was made at the request of the legal holder of the bond, and this recital is *prima facie* evidence of the recited fact. R. S. 1889, sec. 7103. As there was no evidence to contradict the recital it is immaterial whether the assignments are in or out of the case. If improperly admitted, the admission of them does not affect the result. The judgment and decree are, therefore, affirmed. BARCLAY, J., absent; the other judges concur.