MARY E. JONES *vs.* EDWARD C. DONNELLY.

Suffolk. March 18, 1915. — May 20, 1915.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Landlord and Tenant. Contract,* Implied. *Pleading, Civil,* Declaration. *Words,* "Let."

To recover in an action for the use and occupation of real estate the plaintiff must prove that the relation of landlord and tenant existed between him and the defendant.

Where a tenant at will of real estate by reason of a conveyance of the premises by the landlord becomes a tenant at sufferance, he is not liable for rent until he has notice of the conveyance.

An agreement by the owner of a building "to let to" a certain bill poster "the location of roof" on the building, "Fence to be forty feet long for one year . . . the same to be used for the purpose of fence bill posting and general advertising, and to continue as long as one year said location is used for advertising purposes," nothing objectionable to be painted upon the signs and the bill poster "to assume all liabilities that may be caused by erection of said fence," and to construct a plank walk upon the roof, which is to remain the property of the owner of the building, does not create a relation of landlord and tenant between

the owner and the bill poster, but is merely a contract concerning a permit or license for the use of the roof; and therefore, after use of the premises by the bill poster, neither the owner nor one to whom he conveys his rights in the premises can maintain against the bill poster by reason of the agreement an action for use and occupation of the premises.

The mere use of the word "let" in an agreement granting a right or privilege to occupy a roof for bill posting purposes does not make the agreement a lease nor create the relation of landlord and tenant between the parties to the agreement.

CONTRACT "for rent" in the sum of $546 and interest according to an account annexed, which set forth a claim "for the use of premises at 309 Tremont Street, Boston, from May 1, 1908, to August 1, 1913." The action originally was brought in the name of Mary E. R. Jones, the plaintiff's mother. Writ in the Municipal Court of the City of Boston dated September 10, 1913.

On removal to the Superior Court, the case was tried before *Hitchcock*, J. It appeared that up to February 15, 1906, the premises in question were owned by the plaintiff's mother, who had made with the defendant the agreements in writing described in the opinion for the use of the roof. She conveyed the premises to the plaintiff by a deed dated February 15, 1906, acknowledged on May 3, 1909, and recorded on May 8, 1909. The plaintiff testified that she was the owner of the premises from the date of the deed, but that she never told the defendant that she had become the owner because she wanted her mother to take pleasure in having it understood that she still owned the property. The defendant did not know before the action was brought that the plaintiff claimed to be the owner of the premises.

No agreements were made between the plaintiff's mother and the defendant as to the use of the premises in question except those described in the opinion as "the written contracts of 1896 and 1899."

There was conversation between one Keene, an agent of the defendant, and the plaintiff's mother in February, 1908, relating to a reduction in the amount to be paid for the use of the roof. Afterwards there was correspondence between them on the same subject. A letter to the defendant, dated November 5, 1908, written by the plaintiff and signed by her, read as follows: "I do not accept your check upon the terms contained in your receipt, but have credited the same upon your account and must insist

upon your sending me a check for the balance to February 1st, 1909. The check received pays to May 1st, 1908."

The other material evidence is described in the opinion. At the close of the evidence, the defendant asked for the following rulings among others:

"1. On all the evidence the plaintiff is not entitled to recover and your verdict must be for the defendant.

"2. The relation of landlord and tenant did not exist between the plaintiff and the defendant.

"3. The defendant's standing in law under the original written instrument was merely that of a licensee and not that of a tenant."

The rulings were refused. The judge in his charge gave among others the following instructions to the jury:

"In this case there is nothing to show that there was any express agreement made between the defendant and the present plaintiff; . . . but the claim is made here that the defendant continued to occupy with no change and that in view of that fact the jury are asked to infer that it continued under the same terms as previously existed, in so far as it may appear that the present plaintiff knew about those terms.

"It may be said to be a general principle of law that in the case of a continuation of a tenancy after the previous tenancy has expired in any proper form, it may be inferred, in the absence of other evidence to control it, that the tenancy continues on substantially the same terms as existed before, especially so far as it may be shown that the new owner, or the owner of the premises, and the tenant were cognizant with and knew what those terms were before the termination of the tenancy. It may be conceded, perhaps, in this case that by the continuation on the part of the defendant of the occupancy of this part of the house for maintaining signs, and the using of them, it would be a continuation on his part of a tenancy of some kind; and by the bringing of this action the plaintiff claims that there was a tenancy existing between herself and the defendant, and the important question comes now as to the terms under which that tenancy continued; there being no express agreement, then the tenancy is implied, and it is for the jury to say from all the evidence in the case what the terms were of the new tenancy, and that includes what would be fair rental therefor.

"In the case of an implied tenancy, what would be the rental of these premises would be a question of 'fact to be determined, and that would be determined with reference to what would be a fair and reasonable rent for such occupancy."

The defendant excepted to so much of the charge as said it might be conceded that by a continuation of the occupancy of the roof a tenancy of some kind was created, and that it might be inferred that the tenancy continuing after the sale of the property was on the same terms as before.

There was a verdict for the plaintiff in the sum of $652.07, of which the plaintiff afterwards remitted all but $569.85; and the defendant alleged exceptions.

*J. M. Maloney*, for the defendant.

*K. Howes*, (*L. G. Brooks* with him,) for the plaintiff.

CARROLL, J. The plaintiff sues for the use and occupation of a roof used for advertising purposes, and her right to recover in this form of action depends upon whether the relation of landlord and tenant existed between herself and the defendant. *Central Mills Co.* v. *Hart,* 124 Mass. 123. *Kirchgassner* v. *Rodick,* 170 Mass. 543. *Rogers* v. *Coy,* 164 Mass. 391. Keener on Quasi-Contracts, 191, 192.

If the defendant at the termination of his contract with the plaintiff's mother became a tenant at will, as argued by the plaintiff, and was such when Mary E. R. Jones, the mother, conveyed the real estate in question to the plaintiff, and the defendant thereby ceased to be a tenant at will and became a tenant at sufferance, even then the plaintiff is not entitled to recover, for the reason that a tenant at sufferance under these circumstances is not liable for rent until he has had notice of the transfer; and from the record it appears that no such notice was ever given him. *Dixon* v. *Smith,* 181 Mass. 218.

In the written contracts of 1896 and 1899 between the defendant and the plaintiff's mother, who was then the owner of the premises, it is agreed "to let to John Donnelly and Sons . . . the location of roof 309 Tremont St  Fence to be forty feet long for one year . . . the same to be used for the purpose of fence bill posting and general advertising, and to continue as long as one year said location is used for advertising purposes." The fence to remain the property of the defendant, who was "to assume all liabilities that may be caused by erection of said fence." It was further

agreed that nothing objectionable should be painted on the signs and that the defendant should construct a plank walk on the roof, which was to remain the property of Mary E. R. Jones.

This agreement did not give to the defendant the exclusive possession of the roof. The possession of it was retained by the owner of the premises and she had the right to use it and occupy it for all purposes not inconsistent with the terms of the contract. She remained liable to travellers on the highway for injuries caused by negligence in the care of the roof, to the same extent as any other landlord is liable, who retains the possession and control of the premises. The defendant had merely a right or privilege to occupy the roof, under the owner, and he was therefore not a tenant, but a licensee.

In *Lowell* v. *Strahan*, 145 Mass. 1, where an agreement was made for an annual payment, allowing a sign to remain on the outside wall of a building, it was construed to be a license and not a lease, and in the opinion of the court W. Allen, J., uses this language: "It was permission to do a particular act, namely, to affix a sign to the wall, and gave no authority to do any other act upon the premises. . . . Every license to do an act upon land involves the exclusive occupation of the land by the licensee, so far as is necessary to do the act, and no further. A lease gives the right of possession of the land, and the exclusive occupation of it for all purposes not prohibited by its terms." The relation of the defendant to the owner would be the same under the agreement before us, if instead of giving him the right to maintain a sign on the roof, it gave him the right to use the entire outside wall of the premises for that purpose. In either case he could not exclude the landowner from the premises as a tenant could in whom the exclusive possession remains during the term of the tenancy.

Nor is the word "let" in the agreement of controlling significance. We speak of letting quarters to a lodger when the lodger is merely a licensee and not a tenant, *White* v. *Maynard*, 111 Mass. 250; or letting a hall on certain days, *Johnson* v. *Wilkinson*, 139 Mass. 3; *Oxford* v. *Leathe*, 165 Mass. 254; or receiving "rent" when the owner of a bar room gives to another the right to carry on a restaurant on the premises, *DeMontague* v. *Bacharach*, 181 Mass. 256; or letting a specified place in a stable for the keeping of a horse and vehicle, *Congregation Beth Israel* v. *O'Connell*, 187 Mass. 236;

or leasing a location in a department store for the sale of music, *R. H. White Co.* v. *Remick & Co.* 198 Mass. 41.

The written agreements of 1896 and 1899 were nothing more than permits or licenses by the owner of the building to the defendant, to go upon the roof and construct the fence or sign to be used for advertising purposes. These agreements conveyed no title or interest in the building or in any part of it. The dominion, control and possession of the estate were not given up by the landowner, and the rights of the parties were derived entirely from the written contract and are governed thereby. *Reynolds* v. *Van Beuren*, 155 N. Y. 120. *Roberts* v. *Lynn Ice Co.* 187 Mass. 402.

There being no relation of landlord and tenant subsisting between the parties or between the defendant and the plaintiff's mother, the former owner, the count for the use and occupation will not lie and the plaintiff cannot recover in this form of action.

As these exceptions must be sustained, we do not consider the requests of the defendant relating to other aspects of the case; nor do we consider what other remedy, if any, the plaintiff has against the defendant.

*Exceptions sustained.*