# JOHNSON ET AL v. SELLERS

(No. 2069; December 5, 1938; 84 Pac. (2d) 744)

For the plaintiffs in error, the cause was submitted on the briefs of *T. S. Taliaferro, Jr.* and *A. L. Taliaferro* of Rock Springs.

408

For the defendant in error, the cause was submitted on the brief of *Glen G. Stanton* and *W. A. Muir* of Rock Springs.

RINER, Justice.

The district court of Sweetwater County entered its judgment awarding possession of certain real property, together with damages in the sum of $6.25 for withholding same, and cancelling certain conveyances relative to said property and found by the court to be void in favor of E. C. Sellers, plaintiff in an action pending in that court and against W. A. Johnson and John Borcoman, the defendants therein. These proceedings in error were instituted by the unsuccessful litigants aforesaid, as plaintiffs in error, against Sellers, as defendant in error. The facts so far as necessary to be considered in the disposition of the case will be recited in connection with our examination of the points urged to obtain a reversal of the judgment.

The first contention made is that Sellers in his amended petition filed in said action in the district court above mentioned improperly joined therein a cause of action in ejectment with one to remove a cloud to the title of the real property involved, which was in amount 7.2 acres, described by metes and bounds and located in the Southeast Quarter of the Southeast Quarter of Section 9, Township 18 North, Range 107 West of the Sixth P. M.

The plaintiff's amended pleading referred to above contains three alleged causes of action, the first one being grounded substantially upon the provisions of Section 89-3903 W. R. S., 1931, which reads:

"In an action for the recovery of real property, it shall be sufficient if the plaintiff state in his petition that he has a legal estate therein, and is entitled to the possession thereof, describing the same as required by § 89-1041 and that the defendant unlawfully keeps

him out of the possession; and it shall not be necessary to state how the plaintiff's estate or ownership is derived."

Section 89-1041 referred to in the quoted Section reads:

"In an action for the recovery of real estate, the property shall be described with such certainty as will enable an officer holding an execution to identify it."

The second cause of action repeats the allegations thus set forth in the first one and adds averments that the defendants have excluded plaintiff from the rents and profits of said premises, stating the amount of the loss thereby, and refused to account therefor. The third cause of action is one for the cancellation of two allegedly void conveyances and their removal as clouds upon the plaintiff's title to the property aforesaid. These instruments are therein described as a sheriff's deed to said property delivered to the defendant Borcoman and based upon an erroneous execution sued out upon a judgment which did not authorize an execution of the character thus issued to be placed in the hands of the sheriff, and also a warranty deed from the defendant Borcoman to the defendant Johnson purporting to convey to the latter the property included in the sheriff's deed aforesaid.

It appears from the record that plaintiff's amended petition was verified and filed September 14, 1936. A demurrer was filed by the defendants aforesaid on September 15, 1936, which according to its introductory paragraph appears to be directed solely at the second cause of action set forth in the original petition inasmuch as this demurrer bears the date of September 9, 1936. At the time of filing that demurrer it is evident that the original petition had been entirely superseded by the amended pleading and was no longer in the case. It appears additionally that nothing was filed by the defendants affecting plaintiff's amended petition

in the nature of a complaint on account of misjoinder of causes of action in that pleading averred until June 30, 1937, when the defendants filed a demurrer to the third cause of action contained in plaintiff's amended petition, and therein stated:

"That the cause of action alleged in the said Amended Petition in trespass is improperly joined with the cause of action alleged in said Amended Petition seeking to clear title, and for which reasons the plaintiff's suit herein cannot be maintained."

By that time the defendants had answered the plaintiff's amended pleading, said answer being filed on November 14, 1936, and a reply thereto had been subsequently filed, demurrers interposed to it and ruled on by the court; the cause had been tried to the court with a jury in attendance, the jury finally discharged on account of the parties to the litigation having each moved the court for directed verdicts in their favor, and briefs had been ordered to be submitted in connection with the argument of the cause.

Section 89-1008 W. R. S., 1931, reads as follows:

"When any of the defects enumerated in § 89-1006 do not appear upon the face of the petition, the objection may be taken by answer, and if no objection be taken either by demurrer or answer, the defendant shall be deemed to have waived the same, except only the objection to the jurisdiction of the court, and that the petition does not state facts sufficient to constitute a cause of action."

Section 89-1006 so far as here pertinent enacts that:

"The defendant may demur to the petition only when it appears on its face either:
*  *  *  *  *  *

"6. That several causes of action are improperly joined. *  *  *  *  *  *"

Applying these statutes to the situation presented

by the matter in hand, it would appear that the defendants had clearly waived the alleged defect of misjoinder of causes of action in plaintiff's amended petition. In the case of Mau v. Stoner, 15 Wyo. 109, 87 Pac. 434, 89 Pac. 466, this court, referring to the statute embodied in Section 89-1008, supra, has heretofore ruled that where the misjoinder of separate causes of action was not apparent upon the face of the petition the defect was required to be raised by answer or it would be waived. Of course, if apparent, a demurrer to the pleading must be filed in apt time or the same result would follow.

But even if we should be mistaken in this view of the point raised, we are inclined to think that under the statutory provisions and authorities presently to be mentioned, it was quite proper for the plaintiff to unite in his amended petition the several causes of action described above. Section 89-601 W. R. S., 1931, reads in part:

"The plaintiff may unite several causes of action in the same petition, whether they are such as have heretofore been denominated legal or equitable or both, when they are included in either of the following classes:
"1. The same transaction, or transactions, connected with the same subject of action. * * * * * *"

In Keens v. Gaslin, 24 Neb. 310, 38 N. W. 797, it was held, the opinion of the court being filed by Judge Maxwell, that where a cause of action in equity is set forth in a petition as to remove a cloud from the title of real property, and in another count facts to show the plaintiff's right to an action of ejectment are pleaded, both being for the same tract of land, a demurrer on the ground of misjoinder would not lie.

Under Revised Statutes, Section 2647, of Wisconsin, permitting the joinder of causes of action, whether they were such as were formerly denominated legal or

equitable or both, where they arose out of the same transaction or transactions connected with the same subject of action, it was held in Kruezinski v. Neuendorf, 99 Wis. 264, 74 N. W. 974, that infant heirs might join an equitable action to set aside a void decree and conveyances of land, constituting cloud upon their title, with the legal action to recover possession of the land.

In Morrison v. Herrington, 120 Mo. 665, 25 S. W. 568, the original petition was an ordinary action of ejectment. An amended petition was subsequently filed and an additional count was inserted in the petition asking the court to cancel deeds to the land in controversy. Complaint was made to the court in an appropriate form and in apt time because this was done, but the court declined to interfere. Holding that no error had been committed, the Supreme Court of Missouri said:

"Here the plaintiff simply added a cause of action in equity to his ejectment count, and this he had a right to do. A plaintiff may unite in the same petition several causes of action, whether they be such as have been heretofore denominated legal or equitable, or both, where they arise out of the same transaction and are connected with the same subject of action. R. S. 1889, sec. 2040. Here the causes of action, one legal and the other equitable, arose out of transactions connected with the same subject of action. The parties being the same also, there was no misjoinder. Though the court could have granted full and complete relief on the equity cause of action, even to awarding a writ of possession, still it is quite common practice to join an ejectment count with an equity cause of action in such cases."

See also Lane v. Dowd, 172 Mo. 167, 72 S. W. 632, where the court, having under consideration the same statutory provisions, remarked:

"While there is a legal fiction that ejectment is a

possessory action, yet we know in reality that in every ejectment suit we try title. The plaintiff must recover upon the strength of his legal title. But, aside from that, the subject-matter of the action is 'the land', and it is involved in both counts of the petition; and the mere fact that one of the counts is a mere possessory action, and the other involves the title, cannot change the proper application of this statute."

Similarly this court in Delfelder v. Teton Land & Investment Co., 46 Wyo. 142, 217-218, 24 Pac. (2d) 702, 26 Pac. (2d) 153, 159, stated:

"The fact of possession is in many, if not most of the cases, but of minor significance. The point of importance ordinarily is the title. That is true here. We need not discuss or determine the full significance of that fact, except to say that in many, and perhaps most, jurisdictions, the action is no longer a purely possessory action, but is, where both the title and the right of possession are brought in question, one in which the title in question also is finally adjudicated."

The rule is stated in 1 C. J. S. 1265, Section 94 d, thus:

"In an action to recover specific real property, equitable relief with regard to the same property may as a general rule be sought, such as the cancellation or setting aside of a deed, or the cancellation of a contract of sale, or the quieting of title, or compelling the re-execution of an unrecorded deed which has been lost or destroyed, or partition.

There may be appropriately cited additionally in this connection: Upjohn v. Moore, 45 Wyo. 96, 101, 16 P. (2d) 40; Lee v. Thornton, 176 N. C. 208, 97 S. E. 23; Lattin v. McCarty, 41 N. Y. 107; McKinley v. Britton, 55 Ind. App. 21, 103 N. E. 349; Wilkeson v. Miller, 63 Wash. 680, 116 Pac. 268; Lott v. Van Zandt, 107 S. W. (2d) (Tex. Civ. App.) 761. The foregoing authorities announce with reasonable clearness the underlying idea of the practice codes to have parties settle

their difficulties relative to the same subject-matter in one action if at all possible, and we can perceive no good reason why that should not be done in a case such as we now have before us.

It is insisted also that the plaintiff Sellers was a "remainder man" only, and was not, accordingly, entitled to the possession of the premises involved. To understand this contention it becomes necessary to give a somewhat abbreviated history of the title to the property affected. By a warranty deed of August 20, 1921, which was recorded in the County Clerk's office of Sweetwater County on September 22, 1921, one J. Edson Himes became the owner of this property. On July 2, 1925, Himes executed an instrument denominated a "lease," whereby for the sum of $1.00 "as rent" for the premises, paid him by Wyoming Oil Products Company, and in consideration of certain covenants and agreements therein set forth, to be kept by that company, he "demised and leased" to said company "all those premises, situate, lying and being in the County of Sweetwater and in the State of Wyoming, known and described as follows, towit: All necessary ground surface (exclusive of mineral and oil rights) within the Southeast Quarter of Southeast Quarter of Section 9, Township 18 North, Range 107 West of the 6th P. M., subject nevertheless to the right of the said lessor, his heirs, executors, administrators and assigns, of ingress, regress and egress in and upon said leased land to other properties contiguous thereto, or in the vicinity thereof, upon which it may be necessary for the lessee herein to erect retorts, tanks and any buildings necessary and required in the operation of its business of mining shale, contained in the Southwest Quarter and the Northwest Quarter of Section 10, Township 18 North, Range 107 West of the 6th P. M., in Sweetwater County, Wyoming, and producing from said shale products and by-products thereof."

It was provided in said instrument that the Wyoming Oil Products Company should hold the property therein described from July 1, 1925, until June 30, 1950, with the privilege, at the election of said corporation, thirty days before the expiration of the original period for which the instrument was given, of renewal for an additional term of twenty-five years. The Wyoming Oil Products Company agreed to pay also any taxes lawfully levied against said leased lands, and its failure to do so for three months after they became due and payable should, at the election of Himes, upon fifteen days notice to the Company, forfeit the "lease." The instrument also provided:

"It is expressly understood by and between the parties hereto, that the said first party reserves unto himself and to his heirs, executors, administrators and assigns, all mineral contained in said leased land, and that in the use of the surface of said land, the party of second part shall not occupy a greater area for its plant than is reasonably necessary, and that said second party shall not commit waste upon said land so leased, nor maintain a nuisance in and upon the same."

There is no need of mentioning other provisions in the instrument. It was recorded in the office of the County Clerk of Sweetwater County July 3, 1925.

Under date of May 26, 1931, the district court of Sweetwater County, Wyoming, rendered a decree, which seems to have been entered on the court's journal on July 2, 1931, in a case wherein the Western Powder Company, a corporation, was plaintiff, and J. E. Himes, Wyoming Oil Products Company, a corporation, Wheelwright Construction Company, a corportion, and sundry others were defendants. In that suit the defendant Wheelwright Construction Company had on March 7, 1929, filed an answer, cross-petition and supplemental petition against the plaintiff and also against the defendants Himes, Wyoming Oil Prod-

ucts Company and certain other defendants not necessary to be mentioned. In the decree aforesaid the court found as a fact that Himes on September 16, 1925, had given three promissory notes to the Wheelwright Construction Company, a Utah corporation, totaling $20,000, the last of these notes falling due November 1, 1925, and that to secure said notes, on that date, had also delivered to said Wheelwright Construction Company a real estate mortgage recorded December 15, 1926, in the County Clerk's office aforesaid, on the property involved in the litigation now before us "subject to a certain lease given to the Wyoming Oil Products Company under date of July 2, 1925," (the instrument denominated a lease and above more particularly described) with other property, and that nothing had been paid on either principal or interest on said notes. In the decree aforesaid the court also concluded as a matter of law that the Wheelwright Construction Company was entitled to judgment against Himes in the sum of $20,000, with interest at eight per centum per annum, from September 16, 1925, a stated attorney's fee, and a decree of foreclosure of the mortgage, which the court in said decree proceeded to adjudge. This decree of foreclosure resulted in a sale of the property aforesaid, which was duly confirmed by the court on January 27, 1932. In due course, as directed by said confirmatory order, the sheriff of Sweetwater County, Wyoming, issued his deed to the property herein involved to the plaintiff Sellers, as the assignee of the certificate of sale delivered by the Sheriff to the Wheelwright Construction Company pursuant to said decree, said deed also being made "subject to a certain lease given to the Wyoming Oil Products Company under date of July 2, 1925."

Thereafter and on April 11, 1936, the Wheelwright Construction Company executed and delivered to the plaintiff Sellers its quitclaim deed, which was duly

recorded in the County Clerk's office aforesaid on April 13, 1936, to the property involved, and contained no "subject to" clause.

The right of the Wyoming Oil Products Company, a corporation organized and existing under the laws of the State of Delaware, "to carry on business in the State of Wyoming," on May 15, 1929, was forfeited on account of failure to comply with the provisions of Chapter 117 of the Session Laws of the State of Wyoming, 1925" by proclamation of the Governor of the State of Wycming, said corporation having neglected to file annual reports and pay license taxes for several years, as by law required to do.

The record discloses further that the Wyoming Oil Products Company never at any time availed itself of the right or rights given it by the instrument dated July 2, 1925, and referred to in the various conveyances above described, but conducted its operations and placed its property for the carrying on of those operations on other property entirely. Additionally it may be noted that no proof was submitted to the trial court that the Wyoming Oil Products Company had ever asked for reinstatement or ever had been reinstated in its right to do business in the State of Wyoming.

The contention advanced for the plaintiffs in error, in substance, is that an outstanding title and right to possession of the entire premises described in the instrument denominated "lease," as aforesaid, exists in the Wyoming Oil Products Company, of which fact they, the plaintiffs in error, are entitled to take advantage in the litigation at bar, notwithstanding the fact that the proofs disclosed in the cause that the title on which they themselves rely rested upon instruments subsequently issued and based upon an incorrect execution sued out July 20, 1932, upon a decree and judgment obtained by the plaintiff in error Borcoman,

foreclosing a miner's lien on quite other property than that involved herein.

We are inclined to think that the plaintiffs in error are mistaken in this contention also for a number of reasons. In the first place, assuming the instrument in question to be as designated, a "lease," as a matter of law, it is plain that it only leased land to the Wyoming Oil Products Company which was "necessary" for the erection of "retorts, tanks and any buildings necessary and required in the operation of its business of mining shale." It apparently was never "necessary" to use any of the land for this restricted purpose. Certainly if the Wyoming Oil Products Company had placed such erections upon a few square yards of such land, it is difficult to see why the reversioner or "remainder man" should at the instance of others, without valid title thereto at all times during the period of the so-called "lease," be excluded from possession of the land not so used or found necessary for the limited purpose.

36 C. J. 88 says that:

"Express conditions or covenants are frequently embodied in leases to the effect that the premises shall only be used for purposes specified therein, and it is within the power of the parties to make valid restrictions of this character."

The "lease" was not for all the land in the indicated legal subdivision, but only for "necessary" land required for the operations of the company. So far as we can see the "remainder man," as plaintiffs in error designate the plaintiff Sellers, was entitled to the possession of all of the property herein involved until it became "necessary" for the Wyoming Oil Products Company to use any part thereof.

In Koplo v. Ettenger, 84 Pa. Superior Ct. 358, 361, the court said:

"We regard it as the law settled by a strong preponderance of authority that a lease of distinct rooms in a building does not carry an interest in the land beyond that connected with the enjoyment of the particular room; that the room was the thing leased and that the destruction of the building would necessarily terminate the lessee's interest therein."

See also City of Butler v. Western Union Telegraph Company, 93 Pa. Super. Ct. 533.

A case which more closely touches the situation presented would appear to be that of Hagan Co., Inc. et al. v. Norton Coal Co., 137 Va. 140, 119 S. E. 153. In that case certain coal leases granted to the lessee the right to use so much of surface timber, sand, stone and water as might be necessary or convenient for mining or coking coal and for the construction or repairing of buildings, roads, railroads, bridges, ovens and other structures on the premises. It was disclosed in the case also that it was yet uncertain and speculative whether use of the surface of certain lands would ever be necessary or convenient for these several purposes. It was held that the lessors were entitled to such use of the lands in question as might not, if terminated for the time being when lessee's rights accrued, affect such rights, and the lessors might lawfully sell and convey their rights. In so holding the court used the following language:

"It is apparent, however, from the evidence that it is as yet uncertain and speculative whether the use of the surface of the other lands involved in this suit (to-wit, the A. W. Nash tract and the land north of the Steinman land) will ever be 'necessary or convenient' for the mining or coking operations of the appellee. Meanwhile the appellants are entitled under said leases to such use of the surface of such other lands as may not, if terminated for the time being when the rights of the appellee accrue and while they exist under such leases, affect the latter rights, and

the appellants may lawfully sell and convey such rights belonging to them.

"If and when the rights of the appellee, or any of them, accrue as aforesaid, and while they exist, the grounds of jurisdiction above mentioned, for removal of existing cloud upon its right or title, or for preventing the violation of covenants of the leases, or for preventing multiplicity of suits, or disturbance of existing easements, will afford the appellee ample remedy in one suit against all of the grantees of the surface of the land, etc., mentioned in the next preceding paragraph, and also against the appellants as to any of such surface, etc., remaining unconveyed away by the latter."

Again, the Wyoming Oil Products Company never having found any part of the land "necessary" for the specified purpose and having been legally forbidden to exercise its corporate functions in this State before it found it necessary to use any of the premises herein involved, we fail to see why the "remainder man" should be deprived of the possession of land that really never was in fact used. The corporation was not dissolved. It was merely forbidden to transact business in the State of Wyoming, and it could hardly comply with the terms of the lease without violating the status in which, due to its own neglect, it was placed by the Governor's proclamation.

Furthermore, it may be suggested that all that was really transferred by the instrument aforesaid to the Wyoming Oil Products Company was a right to select "necessary" land for the erection of retorts, tanks and buildings. Never having selected any portion of the premises for such use, and due to its own acts, it being now impossible for it to do that, it never became entitled to the possession of any of the land in question. It may be pointed out also that the Wyoming Oil Products Company deliberately failed for a period of several years to comply with the laws of this State governing foreign corporations undertaking to do

business in this commonwealth. The consequences of so doing were undoubtedly fully known to its officers. It may very appropriately be argued, as is done by the defendant in error, that thereby the corporation intentionally abandoned any rights it had under the instrument described as a "lease." See the principles governing abandonment as announced in Boatman v. Andre, 44 Wyo. 352, 12 Pac. (2d) 370. Where abandonment has occurred, the landlord in a lease may enter upon the premises and take possession thereof. 36 C. J. 598.

There is serious doubt also whether the so-called "lease" was anything more than a mere license given by Himes to the Wyoming Oil Products Company. An instrument contained the following language:

"In consideration of the payment of the sum of eight hundred dollars ($800.00) per year, by the R. C. Maxwell Company, of Trenton, N. J., hereinafter called the lessee, I, Forrest W. Taylor, hereinafter called the lessor, hereby grant to the lessee the exclusive right to erect a sign or signs for display advertising purposes on the roof of the building at No. 426-428 Main Street and No. 1-7 Pleasant Street, Worcester, Mass., for a period of five (5) years from the first day of January, 1921. Said sum to be payable in equal monthly payments in advance, of sixty-six and 67/100 dollars ($66.67) each, on the 1st day of each and every month during said term.

"The lessee agrees to keep said roof in good condition and be responsible and pay for any damage to persons or property caused by the erection or maintenance of said sign during the term of this agreement.

"The lessee agrees to comply with all statutes, ordinances or regulations that are now in force or may be enacted during the term of this agreement by state or city governments or any commission or board acting thereunder.

"All signs and sign structures placed on the above-described roof shall always remain the personal prop-

erty of the lessee, and shall be kept in repair by the said lessee.

"The lessor may terminate this agreement by giving the lessee sixty days notice in writing, provided the building is needed for building purposes or in case the sale of the property is desired."

Construing the legal effect thereof the Circuit Court of Appeals for the First Circuit, in Taylor v. R. C. Maxwell Company, 31 Federal (2d) 711, said:

. "The first question presented is whether under the written agreements between the parties the Maxwell Company became a lessee or a licensee. It will be noted that the owners of the buildings granted no interest in or possession of any part of them, but only the right to erect a 'sign or signs for display advertising purposes.' Exclusive possession of the roof would remain in the owners, except so far as the same might be required for the exercise of the right granted. While these agreements are called leases, this does not affect the rights of the parties under them. Whether they were leases or licenses to do certain acts upon the buildings described is a local question and in its determination the decisions of the court of last resort of Massachusetts are binding upon us. In Lowell v. Strahan, 145 Mass. 1, 12 N. E. 401, 1 Am. St. Rep. 422, it was held that one who is granted a right to the use of a wall or roof for advertising purposes is a licensee, and the relation of landlord and tenant does not exist between him and the owner. See, also, Jones v. Donnelly, 221 Mass. 213, 108 N. E. 1063. While there are some decisions to the contrary, the Massachusetts decisions are in accord with those of New York and the great weight of authority elsewhere."

See also Tips v. United States, 70 Fed. (2d) 525; Lewis v. Baxter Laundries, Inc., 254 Mich. 216, 236 N. W. 239; R. H. White Co. v. Jerome H. Remick & Co., 198 Mass. 41, 84 N. E. 116.

37 C. J. 289 says that:

"The right to the enjoyment of a license may be lost or released by abandonment and nonuser, as by the

licensee neglecting to avail himself of the license under such circumstances as to evidence an intention to abandon, * * * *."

Finally it is urged that the plaintiff Sellers was guilty of acts of champerty and maintenance of such a character as to deny him relief in an action of this character. But the trial court found upon the facts against the contention of plaintiffs in error. We are unable to find such a situation existing in the record as would, under the well established rules governing appellate procedure, authorize this court to reverse the district court's judgment for that reason.

Finding no error, therefore, in the ruling of the district court of Sweetwater County in its disposition of the cause before us, we must accordingly affirm the same, and an order to that effect will be entered.

*Affirmed.*

BLUME, C. J. and KIMBALL, J., concur.