Quinlan, J.
The plaintiffs George and Deborah Connors have brought this action against the defendants Knights of Columbus (Bishop Rice Council No. 4822) and Bishop Rice Knights of Columbus Council #4822 Building Trust and the Nina Building Associates, Inc. The plaintiffs allege that the defendants illegally terminated their tenancy in the Knights of Columbus building located at 162 West Union Street, Ashland. The plaintiffs have alleged: Count I-Interference with business relations, Count II-Forcible entry and eviction, Count Ill-Loss of business and profits, Count IV-Violation of G.L.c. 93A, Count V-Reckless infliction of emotional distress, Count VI-Breach of covenant of quiet enjoyment, Count VII-Wrongful action/abuse of process and Count VUI-Injunctive relief. The defendants have moved for summary judgment.
Undisputed Facts
For the purposes of this motion, the following facts are undisputed:
The Nina Building Trust formerly owned property located at 162 West Union Street, Ashland for the benefit of the Knights of Columbus. The property was managed by the Nina Building Association, Inc., a corporation owned by members of the Knight of Columbus. The property consisted of ten acres of land and a building and softball field. The building was used by the Knights of Columbus for meetings and functions such as wedding receptions, birthday parties, dances and other group activities.
The plaintiffs are the owners and operators of a business known as Ashland Country Dance Co. In May of 1997, the plaintiffs entered into an oral agreement with Nina Building Association, Inc. on behalf of the defendants[1] for the for the “rental” of a portion[2] of the building at 162 West Union Street on Sunday, Monday, Thursday, Friday and the first and third Saturday of the month. The plaintiffs were permitted to place a sign for their dance company on the property, to store their equipment in the building and to use the defendants’ voice messaging system. The plaintiffs state they paid $2,000.00 per month or $100.00 per night for the use of the portion of the property. The plaintiffs would submit a monthly schedule listing the nights the plaintiffs intended to use the upstairs portion of the property. When the *677 plaintiffs used the building, the defendants operated and staffed a bar on the premises for plaintiffs’ customers. The plaintiffs did not receive any portion of bar receipts. The plaintiffs’ use of the building was limited to the nights the plaintiffs conducted their business.
The plaintiffs admit they were aware that the defendants were considering selling the property. In fact, at one point, the plaintiff George Connors had expressed an interest in purchasing it for development. Following a Request for Proposals from the Town of Ashland, the defendants submitted a proposal to the Town on or about October 7, 1997. Although the proposal was rejected, the defendants began negotiating with the Town of Ashland for the sale of the property. On January 7, 1998, the defendants voted to accept the Town’s offer to purchase the property. Within a week of the January 7, 1998 vote, the plaintiffs were told by Pat Lynch, Trustee of the Nina Building Trust and a Director of the Nina Building Association, Inc., that the property was being sold to the Town and they would not be able to use it beyond March 31st. Although they may not have been privy to details, the plaintiffs were aware of negotiations relating to a sale. The proposed sale was the subject of at least one local news article. When the closing was delayed, the plaintiffs were allowed to continue using the property. In mid-April 1998 the plaintiffs were told that they could continue to use the property until April 30, 1998. That was extended to include May 1st, 2nd, and 3rd at the request of the plaintiff George Connors after he was told of the closing being rescheduled to May 13th. Prior to May 8th, the defendants changed the locks. The closing took place on May 13, 1998. Prior to May 8th, the defendants did not issue a formal notice to quit to the plaintiffs.
Discussion
The defendants’ Motion for Summary Judgment is supported by the affidavits of Richard Maher and Richard Small. In response the plaintiffs submitted a joint affidavit and a copy of a monthly schedule. The Maher and Small affidavits include a number of facts which are not addressed in the plaintiffs’ joint affidavit, particularly with respect to conversations concerning the impending sale and the facts related to the issue of exclusive use of the premises. The plaintiffs’ joint affidavit appears carefully crafted to characterizations of their relationship with the defendants visa-vis the property in question and restricts itself to “ formal termination of [plaintiffs’] tenancy” on the assumption that such was required. “An affidavit must set forth specific facts showing that there is a genuine issue for trial; bare assertions and conclusions [regarding a party’s intent] . . . are not enough to withstand a well-pleaded motion for summary judgment.” Polaroid Corp. v. Rollins Environmental Services (NJ), Inc., 416 Mass. 684, 696 (1993). The plaintiffs do not challenge the defendants’ subsidiary facts relating to discussions concerning the sale and informing the plaintiffs they would not be able to use the premises after a given date due to the sale. Therefore, the court considers those facts as undisputed.
The plaintiffs’ claims survive only if they were tenants of the defendants. In their affidavit, the plaintiffs characterize their agreement with the defendants in terms of a tenancy. The defendants characterize it in terms of a license. There is no essential disagreement concerning the terms of the agreement between the plaintiffs and the defendants. The disagreement focuses on the nature of the agreement and the legal consequences of that agreement. That is a question of law. See Willett v. Pilotte, 329 Mass. 610, 612 (1953); Corbett v. Salusti, 330 Mass. 273, 276 (1953).
There is a distinction between an agreement establishing a tenancy and a license. Baseball Pub. Co. v. Bruton, 302 Mass. 54, 55-56 (1938). A tenancy conveys an interest in the property and transfers possession. “A license merely excuses acts done by one on land in possession of another that without the license would be trespasses, conveys no interest in land, and may be contracted for or given orally.” Id. citing Cook v. Stearns, 11 Mass. 533, 538; Grasselli Dyestuff Corp. v. John Campbell & Co., 259 Mass. 103, 107; Nelson v. American Telephone & Telegraph Co., 270 Mass. 471, 479. “Every license to do an act upon land involves the exclusive occupation of the land by the licensee, so far as is necessary to do the act, and no further. A lease gives the right of possession of the land, and the exclusive occupation of it for all purposes not prohibited by its terms.” Lowell v. Stahan, 145 Mass. 1 as quoted in Stratis v. McLellan Stores Co., 311 Mass. 525, 529 (1942). See also Jones v. Donnelly, 221 Mass. 213, 217 (1915).
Oral permission to use some part of the premises for the purpose of conducting a business does not necessarily convey an interest in the land or create a tenancy. Willett v. Pilotte, 329 Mass. at 612 (Gas station owner allowing another to sell Christmas trees on the premises). In R.H. White Co. v. Remick & Co., 198 Mass. 41, 46 (1908), the contract there in issue authorized the defendant to sell music at a designated location within the store. The terms in the contract used by the parties to describe the relationship was a “lease or contract.” The court stated, “It is not a lease, but a license; and the use of those terms which are appropriate and common in leases cannot change its real nature in that respect.”
Notwithstanding plaintiffs’ attempts to characterize the agreement as creating a tenancy, the oral agreement between the plaintiffs and the defendants did not create a tenancy. It was a license only. A license is revocable at the will of the possessor of the land. “This factor of revocability is the essence of a license to use land of another.” Beal v. Eastern Air Devices, Inc., 9 Mass.App.Ct. 910 (1980), citing Baseball Publishing Co. v. Bruton, 302 Mass. 54, 56 (1938), 2 American *678 Law Of Property s8.112 (1952). 3 Powell, Real Property s428 (Rohan ed. 1978). The plaintiffs were not legally entitled to “formal termination of . . . [their] tenancy” since they were merely licensees. The plaintiffs’ license was revocable at the will of the defendants. The plaintiffs had actual notice of the sale of the property and of the defendants’ revocation of their license. Since the defendants were not required to resort to formal eviction proceedings and could terminate the license at will, there is no basis for the plaintiffs’ claims against the defendants.
ORDER
For the foregoing reasons, the defendants’ Motion for Summary Judgment is ALLOWED as to Counts I through VUI of the plaintiffs’ complaint.

 The Nina Building Association, Inc. is not a named party to this action. For the purposes of this motion, the court treats the Association as the agent of the defendants.

 The upstairs consists of a function hall, bar and lounge area. The bar is staffed by the Knights of Columbus. The plaintiffs do not share in proceeds of bar sales.